UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. LAWRENCE P. RUDOLPH, D.D.S., | : |
| Plaintiff, | : |
| v. | : Civil Action No. _____ |
| SAFARI CLUB INTERNATIONAL, RALPH CUNNINGHAM, LARRY HIGGINS, SCOTT CHAPMAN, JOYCE HANLEY, DAVID SMALL, and JOHN WHIPPLE | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

## COMPLAINT

AND NOW TO WIT, this 21st day of November, 2012, Plaintiffs, by and through their attorneys, Charles E. Steele, Esquire and Jonathan D. Steele, Esquire of STEELE SCHNEIDER, file the within Complaint against the above-referenced Defendants, and in support thereof aver as follows:

### Jurisdiction

1. There is complete diversity of citizenship between the plaintiff and all defendants and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

2. This court has subject matter jurisdiction of the case under the provisions of 28 U.S.C. § 1332(a).

3. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C.A § 1391(b).

### Parties

4. Plaintiff is Dr. Lawrence P. Rudolph, D.D.S., (Plaintiff) a citizen of the Commonwealth of Pennsylvania residing at 336 Lakewood Drive, Greensburg, Pennsylvania 15601.

1

5. Defendant Safari Club International (SCI) is a nonprofit corporation organized and existing under the laws of the State of Arizona, with its principal place of business at 4800 West Gates Pass Road, Tucson, Arizona 85745-9490.

6. Defendant Ralph Cunningham (Defendant Cunningham) is a citizen of the State of Texas residing at 5128 Tangle Lane, Houston, Texas 77056.

7. Defendant Larry Higgins is a citizen of the State of Michigan residing at 1894 Kosiara Road, Gaylord, Michigan 49735-9392

8. Defendant Scott Chapman is a citizen of the State of Michigan residing at 9357 General Drive Ste 121, Plymouth, Michigan 48170-4666.

9. Defendant Joyce Hanley is a citizen of the State of Florida residing at 3208 N Flagler Drive, West Palm Beach, Florida 33407-4914.

10. Defendant David Small is a citizen of the State of Nevada residing at 8801 Icy Mistral Court, Las Vegas, Nevada 89131.

11. Defendant John Whipple is a citizen of the State of California residing at 11 Yale Court, Coto de Caza, California 92679-5008.

**Factual Background**

10. SCI is a nonprofit organization of approximately 55,000 members with 194 chapters in 26 countries with the goal of protecting hunter's rights and promoting wildlife conservation.

11. SCI has multiple chapters in Pennsylvania including one in Pittsburgh.

12. SCI has approximately 320 members on its Board of Directors (BOD) and a ten member Executive Committee.

13. The Board of Inquiry (BOI) is a standing committee of five members within SCI that is in charge of investigating and ruling on issues related to member misconduct.

14. During all time relevant to these facts, Defendant Ralph Cunningham (Cunningham) acted as Chairman of the BOI.

15. During all time relevant to these facts, Defendants Cunningham, Higgins, Chapman, Hanley, and Smalls were members of the BOI.

### Plaintiff's Reputation

16. Plaintiff for many years has enjoyed an excellent reputation as a member of the international hunting community.

17. Plaintiff has been very active in pro-hunting and conservation groups such as Wild Sheep, Ovis/Grand Slam, Weatherby Foundation International, Conklin Foundation, CIC, Shikar Safari Club, Hunter Legacy Fund and Safari Club International with the local Pittsburgh chapter and the International members.

18. Plaintiff has been member of SCI for approximately twenty-five years and a "life member" since 2006.

19. In 2007, Plaintiff received the Weatherby Award which annually recognizes an individual for outstanding support of wildlife conservation, lifetime hunting achievement and dedication to the principles of ethical sport hunting.

20. As an SCI member, Plaintiff has served as SCI Director-at-Large, Safari Club International Foundation (SCIF) Director, SCI-PAC Chairman, Marketing Chairman, National Fundraising Chairman, and on many other committees including the SCI Executive Committee.

21. Plaintiff served as President of SCI and SCIF for two consecutive yearlong terms between 2009-2011.

22. In the forty-year history of SCI, only four Presidents have served consecutive terms.

23. Plaintiff is currently the President of Weatherby Foundation International, a nonprofit corporation whose objective is to educate the non-hunting public on the beneficial role of ethical sport hunting and its contribution to wildlife conservation.

24. Following his second term as President of SCI, Plaintiff signed an employment contract to perform public relation functions for SCI as their Chief Communications Officer.

25. Plaintiff performed excellently in his functions as Chief Communication Officer during the time his contract was in effect.

**Factual Background of BOI Petition Filed against Plaintiff**

26. On February 1-4, 2012, SCI held its annual Hunters Convention in Las Vegas Nevada.

27. During and before this convention SCI member Paul Babaz (Babaz) circulated false rumors about Plaintiff.

28. Babaz falsely stated, Plaintiff was having a long-term affair with a woman in Atlanta under the pretext of conducting SCI business and was using his title as President of SCI to seduce his mistress.

29. Babaz falsely stated "this wasn't the first time" that Plaintiff had engaged in this kind of conduct.

30. Babaz falsely stated Plaintiff was in danger of losing his award from the Weatherby Foundation because of his "adulterous behavior."

31. Babaz falsely stated, that Plaintiff had threatened to fire the host of SCI's television show and cancel the show.

32. Babaz published these false statements to multiple members of SCI including but not limited to Robert Anderson, Jon Wimple, Kirt Fredericks, Jim Frickert, Ron Mizrahi and Plaintiff's Wife, Bianca Rudolph.

33. During the February 2012 convention, Plaintiff and his wife approached Babaz in private to discuss the above statements.

34. Plaintiff's conversation with Babaz became heated and Babaz threatened Plaintiff with physical violence, stating, "I'll take that .45 Kimber you wanted, shove it up your ass, and empty the clip."

35. Plaintiff did not threaten Babaz or become enraged himself.

36. There were no other witnesses to the conversation between Plaintiff, Plaintiff's wife, and Babaz.

37. As a result, of the conversation Babaz filed a false BOI petition against Plaintiff alleging that he acted improperly at the Las Vegas convention and on a hunt that took place in Mexico in 2006.

38. No other claims against Plaintiff were raised in the BOI petition filed by Babaz.

39. The BOI has a detailed procedure in place to grant accused members the right to defend themselves against defamatory accusations leveled against them.

40. The BOI procedures are intended to investigate, eliminate, and otherwise dismiss bad faith defamatory accusations, by allowing the accused to offer a defense to scurrilous and false accusations of misconduct and misbehavior.

41. The BOI is required to grant the accused, such as Plaintiff, the right to submit a written response to allegations of misconduct.

42. The BOI is required to investigate, in good faith, accusations against an SCI member, such as Plaintiff after the submission of the accused's (Plaintiff's) written rejoinder to the proffered accusations of misconduct.

43. Specifically, the BOI procedures also guarantee an accused SCI member, such as Plaintiff, the right to a hearing to contest accusations of misconduct that the BOI preliminarily belief have a basis in fact.

44. On March 27, 2012, Plaintiff submitted a written response denying the allegations contained in the petition through his legal counsel in accordance with BOI Rule of Procedure 4 (c).

45. The BOI issued a letter on May 1, 2012 setting forth their findings of a violation and recommendation for sanctions in accordance with BOI Rule of Procedure 6 (d).

46. The BOI included in its May 1, 2012 letter findings on charges that were not included in the petition filed against Plaintiff, and failed to give him notice of such charges and an opportunity to respond at any time before the letter was sent.

47. The following false claims contained in the May 1, 2012 letter were not subject to any petition filed by an SCI member or resolution voted on by the executive board:

    1. breach of fiduciary duties to SCI,

    2. making false or deceptive record book entries,

    3. making false statements and/or publishing nonpublic SCI information in a publicly available video about SCI,

    4. filing questionable reimbursement requests, and

    5. engaging in dishonest and misleading conduct toward the BOI.

48. Under BOI Rule of Procedure 6 (e) Plaintiff had until May 31, 2012 to request a hearing where he would be given an opportunity to defend himself on the false charges leveled against him.

### May 12, 2012 Board Meeting

49. On May 12, 2012 SCI held a board meeting in Washington D.C. where elections for the 2012-2013 term took place.

50. Plaintiff was a candidate for the position of secretary of SCI for the 2012-2013 term.

51. Approximately, one hundred-twenty members of the BOD were physically present at the BOD meeting and another 40 members from around the world participated via videoconference.

52. Upon information and belief about 8 members from Pennsylvania attended via videoconference.

53. SCI had full knowledge of who was attending the meeting via videoconference as members must login and register to participate.

54. Before the BOD meeting, members of the BOI knew in advance that there would be a significant number of BOD members attending the BOD meeting physically or virtually.

55. Upon information and belief, the BOI collectively decided to present false charges against Plaintiff sans granting him notice or an opportunity to defend himself against defamatory and baseless allegations.

56. The BOI did not want to be constrained by hearing rejoinders to the false allegations leveled against Plaintiff in the context of a hearing, to which Plaintiff was entitled.

57. The BOI's intent, in proffering charges publicly against Plaintiff that had not been fully vetted in a hearing, to which the Plaintiff was entitled, was to intentionally defame Plaintiff against the background of eminent SCI elections.

58. The BOI knew that defaming Plaintiff, at the BOD meeting, would influence the SCI elections, such influence being that Plaintiff would be defeated for elective office at SCI, lose his employment as a Chief Communications Officer for SCI and his SCI membership.

59. The BOI also knew that Plaintiff as a resident of Pennsylvania would feel the brunt of these defamatory statements in his home state.

60. Members of the BOI acted with malice and for personal gain in intentionally publishing false and defamatory statements concerning Plaintiff, such personal gain being to defeat Plaintiff in SCI elections and to replace him in his appointed position for SCI with a political affiliate of their own.

61. On May 12, prior to the 2012-2013 elections taking place, the BOD and the Executive Council (EC) entered into an executive session.

62. The BOI knew that any executive session called at the BOD meeting would be attended by all BOD members present at the May 12, 2012 meeting.

63. Plaintiff fully intended to request a hearing to challenge the defamatory allegations leveled against him and did request a hearing on May 31, 2012.

64. During the May 12, 2012 executive session, Defendant Cunningham prematurely and intentionally detailed all charges the BOI filed against Plaintiff, fully knowing that the charges were nothing more than defamatory allegations since Plaintiff had not been

afforded his full measure of time to request a hearing or his full right to respond, as is required by BOI rules.

65. Defendant Cunningham knowingly published defamatory statements to the board members including but not limited to allegations of:

   1. Adultery,
   2. Making false statements in a campaign video,
   3. Using intellectual property without authority,
   4. Spelling a members name wrong,
   5. Wrongful reimbursement claims,
   6. Travel without Executive Council approval, and
   7. Making false statements to the BOI.

66. During all relevant times Defendant BOI members were acting within the scope of their duties as agents of SCI.

67. Defendant BOI members published the defamatory statement to BOD members who are also agents of SCI.

68. In bad faith, with malice and for the purpose of publishing the defamatory comments to the BOD immediately prior to an election, the BOI ignored the established process outlined in the SCI Board of Inquiry: Rules of Procedure.

69. Defendant Cunningham intentionally failed to take reasonable measures to verify the statements contained in his publication of false and defamatory allegations against Plaintiff.

70. The BOD knew that the BOI was violating its own procedures when it intentionally published un-vetted and defamatory accusations against Plaintiff.

71. The BOD intentionally enabled members of the BOI to intentionally defame Plaintiff by permitting the widespread publication of defamatory statements about the Plaintiff.

72. The BOD was warned not to engage in intentional defamation of Plaintiff by certain of its members who objected to the BOI and the BOD publishing un-vetted defamatory allegations about Plaintiff.

73. The BOI's publication of known defamatory statements was intended to convey, and did convey, to the community at large, the impression that Plaintiff lacked moral character.

74. The BOI's publication of known defamatory statements was calculated to, and did hold plaintiff up to public scorn, hatred, and ridicule.

75. Much of this public scorn, hatred, and ridicule was brought on Plaintiff in Pennsylvania.

76. The words spoken by Defendant Cunningham were false and defamatory and known by him and the BOI to be false and defamatory.

77. The words spoken by Defendant Cunningham, and approved by the BOI, were understood by those who heard them to be defamatory in nature.

78. Defendant BOI members acted with knowledge of the falsity of the statements made or with reckless disregard of their truth or falsity.

79. The words and actions of the Defendants as outlined herein were undertaken intentionally and with an improper purpose so as to defame Plaintiff to cause injury to his reputation and loss of income from his consultant position at SCI.

**August 18, 2012 Hearing**

80. The BOI engaged in a course of conduct to stage the appearance of a hearing relevant to the un-vetted defamatory accusations leveled against Plaintiff on Saturday August 18, 2012.

81. The BOI refused to allow Plaintiff a meaningful opportunity to defend himself in a telephone hearing by not permitting Plaintiff's counsel adequate time to prepare for the telephone hearing, refusing to arrange for a mutually convenient date for the hearing so that Plaintiff and his counsel to attend and denying Plaintiff the right to face his accusers in a face-to-face hearing.

82. The BOI's plan in being uncooperative in scheduling an adequate and mutually convenient hearing was to belatedly grant Plaintiff the hearing he should have been provided prior to the BOI maliciously publishing defamatory and un-vetted allegations about the Plaintiff at the BOD meeting on May 12, 2012.

83. The BOI, in its attempt to conduct a sham hearing for Plaintiff, intends to advance its malicious plan to defame Plaintiff by making it appear to the SCI BOD that Plaintiff "had his day in court" relevant to the defamatory allegations leveled against him when, in fact, the BOI has denied Plaintiff a meaningful opportunity to defend himself against said false allegations.

84. There was no good reason for the BOI to deny Plaintiff a full opportunity to defend himself at a mutually convenient time and place against the defamatory allegations inasmuch as the BOI has granted other SCI members such accommodations in the past.

85. The BOI's refusal to grant Plaintiff the opportunity to defend himself against defamatory allegations is based upon the BOI's bad faith intent to injure Plaintiff's reputation and visit economic damages upon him by providing the SCI BOD a basis, albeit a bad faith basis, to dismiss Plaintiff as a SCI member and communications consultant for SCI.

86. Plaintiff is aware that the BOI treated other SCI members more fairly than he, with the BOI not defaming the accused SCI member of wrongdoing at a BOD meeting.

87. Plaintiff is aware that on March 27, 2012 a BOI petition of misconduct was filed against SCI member Babaz for his behavior at the Las Vegas convention and the publishing of defamatory comments concerning Plaintiff.

88. Babaz is a political opponent of Plaintiff's within SCI.

89. Six detailed statements were submitted in support of the averments contained in the BOI petition of misconduct filed against Babaz.

90. Upon information and belief, the BOI failed to contact any of the SCI members who prepared the statements against Babaz.

91. Upon information and belief, the BOI relied solely on the results of a self-administered polygraph obtained by Babaz in dismissing the charges against him.

92. Notably, Plaintiff successfully underwent an independent polygraph examination relevant to charges leveled against him but charges against him were not dismissed because Plaintiff successfully passed a polygraph examination.

93. The BOI brushed aside the petition of misconduct against Babaz, declining to undertake an investigation of the allegations contained in the petition of misconduct filed against him to support Babaz because of his affiliation with members of the BOI.

94. SCI Member Bruce Evanson (Evanson), another affiliate of members of the BOI was also the subject of a petition of misconduct.

95. As with Babaz, the BOI brushed aside the allegations against Evanson to protect him from the derision he might experience should the allegations against him been investigated and/or published.

96. The BOI's conduct in ignoring its duties to investigate allegations of misconduct when such allegations involve political allies or affiliates of the BOI demonstrates that the BOI acted with malice relevant to the Plaintiff.

97. The BOI intentionally and maliciously treated Plaintiff differently than Babaz and Evanson, as a matter of pretext, by converting defamatory allegations into charges without affording Plaintiff his right to prove that the defamatory allegations had no basis in fact.

98. On August 22, 2012 the SCI Executive Committee issued an emergency suspension of Plaintiff's membership in SCI.

99. On August 23, 2012 Plaintiff requested a hearing on the issue of the emergency suspension in accordance with SCI rules.

100. The BOI initially offered Plaintiff a hearing but no hearing on the emergency suspension was provided to Plaintiff.

**August 25, 2012 Board Meeting**

101. On August 25, 2012 SCI held a board meeting in Jackson Hole Wyoming.

102. At this meeting the BOD expelled Plaintiff from his membership in SCI, terminated his employment contract as Chief Communication Officer, and removed his name from all record book entries and awards.

103. Prior to voting on expelling Plaintiff from membership in SCI, Defendant Cunningham again read a list of false charges leveled against Plaintiff.

104. The charges included new claims that Plaintiff breached his duty of loyalty, care, and fair dealing by moving the Weatherby Award Dinner to a different location than that used by SCI.

105.    The false innuendo conveyed by the charge referenced in paragraph 99 herein portrays Plaintiff as generally duplicitous and disloyal to an organization for which he was an officer and strong supporter.

106.    Plaintiff was never made aware of this false charge.

107.    Defendant's defamatory statements have been published beyond the members of the SCI and reached the international hunting community.

### Defamatory Letter from Whipple

108.    On August 25, 2012 SCI took further action to remove all of Plaintiff's Record Book entries, to remove Plaintiff's name from all World Hunting Awards he qualified for, and to remove Plaintiff's name from all other SCI awards.

109.    Plaintiff was notified of this action via letter dated August 29, 2012 signed by Defendants Whipple and Herb Atkinson.

110.    The aforesaid letter was sent to numerous members of the hunting community in the United States.

111.    The aforesaid letter also was intentionally sent to persons in Pennsylvania who are members of the hunting community and persons who serve on governing boards of hunting organizations of which Plaintiff is a member.

112.    The contents of the aforesaid letter were defamatory inasmuch as it portrayed Plaintiff as not deserving of his hunting accomplishments and to be a person that SCI did not want to associate with.

113.    The foregoing letter also reinforced and otherwise falsely substantiated the BOI charges leveled against Plaintiff.

114.    Since then Defendant Whipple has sent multiple copies of this letter to members of SCI with the purpose of defaming Plaintiff.

115.    Defendant Whipple targeted these letters to individuals he knew could harm Plaintiff, especially in Pennsylvania.

116.    Defendant Whipple sent a copy to a member of a separate hunting organization operating in Pittsburgh, Pennsylvania.

117.    These letters required Plaintiff to defend himself to his close friends and colleagues in Pennsylvania.

118.    Defendant Whipple has also sent copies to many of the organizations Plaintiff belongs to in an effort to defame him.

## COUNT ONE: DEFAMATION

*Against SCI and BOI Members Cunningham, Higgins, Chapman, Hanley, and Small*

119.    Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

120.    Defendant BOI members and SCI made false and defamatory statements concerning Plaintiff whereby Defendant BOI members accused him of engaging in public and private threats and abusive behavior, making false or deceptive record book entries, making false statements and/or publishing nonpublic information concerning SCI, engaging in inappropriate relationships with women while on SCI business or while disclosing that he was SCI's President, filing questionable reimbursement requests, lying to the BOI, and breaching his fiduciary duty to SCI.

121. These statements were patently and demonstrably false, constituted fact or factually laden opinion, which can be substantially proven false and constituted defamation.

122. Defendant BOI members published these rumors to the BOD and members of the executive council sans any privilege to do so.

123. Defendant BOI members made these materially false and misleading statements about Plaintiff as set forth above, knowing the claims were false, defamatory and, particularly in the context of the communications, outrageous and incendiary; or with reckless disregard as to whether the statements were false, defamatory and/or outrageous and incendiary.

124. No judicial privilege or immunity attaches to these statements because they were not made during a judicial or quasi-judicial proceeding, and no reasonable person can doubt the statements' impropriety.

125. Any privilege connected to these statements was waived because (a) Defendant BOI members and SCI knew these statements were false or made these statements with reckless disregard as to whether the statements were false or not; (b) the statements were unnecessarily insulting; (c) the language used was stronger or more violent than was necessary under the circumstances; and/or (d) the statements were made because of malice, hatred, ill will or a desire to injure or irreparably injure Plaintiff, rather than a fair comment on the subject.

126. Defendant BOI member's defamatory statements have been published outside of the BOD members and reached members of the international hunting community.

127. Such publications have caused Plaintiff to have his contract of employment with SCI terminated.

128. Such publication has caused Plaintiff to lose estimation in the eyes of his colleagues, friends and acquaintances in the international hunting community.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

## COUNT TWO: DEFAMATION BY INNUENDO
*Against SCI and BOI Members Cunningham, Higgins, Chapman, Hanley and Small*

129. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

130. Plaintiff has been the subject of a rumor whereby Defendants BOI members and SCI accused him of engaging in public and private threats and abusive behavior, making false or deceptive record book entries, making false statements and/or publishing nonpublic information concerning SCI, engaging in inappropriate relationships with women while on SCI business or while disclosing that he was SCI's President, filing questionable reimbursement requests, lying to the BOI, and breaching his fiduciary duty to SCI.

131. The innuendo of Plaintiff's adultery stems directly from the statements published by SCI and the BOI members.

132. Due to the current mores of common society, calling a one an adulterer is capable of defamatory meaning to any and all recipients.

133.    The innuendo of Plaintiff's business reputation stems directly from the statements published by SCI and the BOI members.

134.    Such defamation was expressly aimed at Pennsylvania because Defendant's knew Plaintiff would suffer the brunt of the harm in his state of residence.

135.    Such allegations have caused Plaintiff to lose estimation in the eyes of his colleagues, neighbors, friends and acquaintances.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

### COUNT THREE: DEFAMATION BY INNUENDO
*Against Defendant Whipple and SCI*

136.    Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein.

137.    Plaintiff has been the subject of a letter signed by Defendant Whipple wherein he is stripped of all his hunting awards and record book entries.

138.    The innuendo of Defendant's claims is that Plaintiff is a dishonest hunter and man and lends approval to all the underlying defamatory charges brought by SCI and the BOI.

139.    Due to the current mores of common society, stripping one of all his awards and record book entries is capable of defamatory meaning to any and all recipients. .

140.    Such innuendo was expressly aimed at Pennsylvania because Defendant's knew Plaintiff would suffer the brunt of the harm in his state of residence.

141.    Such allegations have caused Plaintiff to lose estimation in the eyes of his colleagues, neighbors, friends and acquaintances.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

### COUNT FOUR: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIP
*Against SCI and BOI Members Cunningham, Higgins, Chapman, Hanley and Small*

142. Plaintiff incorporates the foregoing paragraphs by reference as if fully set forth herein

143. Plaintiff had a valid contract with SCI to be employed as their Chief Communication Officer and perform public relation functions.

144. The BOI members knew of Plaintiff business relationship with SCI as Chief Communication Officer.

145. The BOI members intentionally interfered with that contract by intentionally and maliciously defaming Plaintiff before the BOD.

146. As a direct result of the BOI's defamatory comments Plaintiff's contract with SCI was terminated.

147. WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

### COUNT FIVE: PUNITIVE DAMAGES
*Against SCI and BOI Members Cunningham, Higgins, Chapman, Hanley and Small*

148. The foregoing recitals are incorporated by reference as if fully set forth herein.

149. The Defendants acted intentionally, with ill will, evil motive and actual malice toward Defendant in publishing defamatory statements they knew to be untrue or unfounded regarding his marital fidelity, integrity as a hunter and member of SCI and honesty as a businessperson.

150. The Defendants acted intentionally, with ill will, evil motive and actual malice toward Defendant in denying him the opportunity to defend himself against defamatory allegations in a fair hearing scheduled at a mutually convenient time related to his marital fidelity, integrity as a hunter and member of SCI and honesty as a businessperson.

151. The Defendant's conduct was outrageous in nature due to its maliciousness, evil motivation, ill will and actual malice.

WHEREFORE, Plaintiff respectfully requests this honorable court enter judgment against all Defendants for compensatory and punitive damages in an amount to be determined at trial in an amount in excess of the jurisdictional limits.

Respectfully submitted,

*/s/ Charles E. Steele, Esquire*
Charles E. Steele, Esquire
PA I.D. No. 36583
Jonathan D. Steele
PA I.D. No. 313969
STEELE SCHNEIDER
428 Forbes Avenue, Suite 900
Pittsburgh, PA 15219
(412) 235-7682
(412) 235-7693/facsimile
csteele@steeleschneider.com
jonathansteele@steeleschneider.com