# Spokesperson/Director of Public Outreach Agreement

This Spokesperson Agreement ("Agreement") is effective as of July 1, 2011 between Safari Club International, an Arizona, non-profit corporation, ("SCI") and Camelback Consulting/Marketing, L.L.C., an Arizona limited liability company, (the "Spokesperson").

WHEREAS, SCI is an organization whose mission includes Wildlife Conservation, Education and Advocacy of Hunting and Hunters' Rights; and

WHEREAS, SCI is desirous of obtaining a professional Spokesperson to serve as a worldwide ambassador and Spokesperson for SCI and its mission; and

WHEREAS, Spokesperson has the knowledge, skill and experience in these areas, and the diligence and ability to provide or perform Spokesperson services to SCI;

THEREFORE, in consideration of the foregoing, SCI and Spokesperson agree as follows:

1.  INDEPENDENT CONTRACTION RELATIONSHIP

In accordance with the mutual intentions of SCI and the Spokesperson, this Agreement establishes between them an independent contractor relationship, and all of the terms and conditions of this Agreement shall be interpreted in light of that relationship. There is no intention to create by this Agreement an employer-employee relationship. The Spokesperson shall have no claim against SCI hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

2.  TERM

The Spokesperson shall commence providing services on July 1, 2011, and shall continue to do so through June 30, 2014. This Agreement shall be automatically renewed for up to two additional three-year terms after the expiration of the initial term, unless either party gives written notice of an intent not to renew at least ninety (90) days prior to the expiration of the then-current term; provided, however, that any such notice of nonrenewal by SCI will be effective only if approved by SCI's Executive Committee ("EC"). Notwithstanding the foregoing, the Agreement may be terminated at any time by SCI pursuant to paragraphs 16 and 17 of this Agreement.

3.  AMOUNT OF SERVICE

It is understood and agreed by the parties that SCI does not have the exclusive right to the Spokesperson's services. It is understood and agreed, however, that SCI has the right (although it has no obligation) to use, and the Spokesperson shall provide, services at mutually agreeable times and places and so as not to interfere unreasonably with other consulting or employment of the Spokesperson.

4.  CONFLICT OF INTEREST PROHIBITED

(a)   Spokesperson warrants and represents that he is free to enter into this Agreement, and that this engagement does not violate the terms of any agreement between the Spokesperson and any third party and that there is no conflict of interest in the Spokesperson's other contracts

for services or other employment, if any, with the services to be provided pursuant to this Agreement. Spokesperson will ensure that no such conflict arises during the term of this Agreement, which includes but is in no way limited to use of another's trade secret, confidential or proprietary information or engaging in any services or conduct at any time that conflicts with SCI's public image. It is understood and agreed that the mission and activities of the following entities are unrelated to and not in conflict with the primary mission and business of SCI and, therefore, Spokesperson may serve as a board member and/or officer of the following: Weatherby Foundation and/or Conklin Foundation.

(b) Spokesperson agrees that, during the term of this Agreement, he will not consult, work or serve in any capacity for another person or entity which intends to operate or does operate in any business in competition with SCI or whose mission, purpose or goal is in conflict or competition with SCI or its mission. For a period of six (6) months following any termination of this Agreement, the Spokesperson shall not, directly or indirectly hire, solicit, or encourage to leave SCI's employment, any employee, consultant, or contractor of SCI or hire any such employee, consultant, or contractor who has left SCI's employment or contractual engagement within one year of such employment or engagement.

5.  TYPE OF SERVICE/REPORTING

Spokesperson shall appear from time to time as an ambassador and spokesperson of SCI and its purposes and mission at various events or outings and in so doing, Spokesperson must communicate and act at all times in a manner consistent with the established policies and public image of SCI. In carrying out this function, Spokesperson may consult with staff and volunteers, including members of the Board of Directors ("Board"), concerning the public advancement of the goals and objectives of SCI. Spokesperson also may, from time to time as needed or requested, provide input and advice in speechwriting and development of media productions, including video and radio messages as appropriate for the public advancement of the goals and objectives of SCI, and in the selection of topics for public relations work and venues for the presentation of such work. Spokesperson will serve to advance the strategic outreach goals and objectives of SCI. Spokesperson agrees to make himself available, during the Term of this Agreement, for up to 60 days per year, including travel days, with a minimum of fifteen (15) engagements, at SCI's request, for the purposes of making appearances, including public or promotional appearances on behalf of SCI. These appearances may include, but will not be limited to, events such as the following: sportsman and hunting shows and conventions; firearms and other hunting equipment shows, expositions and shows; SCI-sponsored business or social events, outings, board meetings; promotions of SCI and its mission; news issues and events, press conferences, conservation meetings (e.g., CITES) hunting organizations (e.g., PHASA), SCI Chapter events, political appearances, Congressional testimony or public relations events or appearances. Spokesperson shall attend the events listed on Attachment A hereto unless otherwise excused or directed by SCI. Spokesperson also shall make himself available for the purposes of entertaining persons on behalf of SCI for either strategic policy or fundraising purposes. Spokesperson may also be required to produce video and other media programs. Spokesperson will consult with the Executive Director, the EC, and members of SCI's Marketing, Convention, Public Relations, Fundraising and Membership Committees as necessary or as requested by SCI. Spokesperson agrees to make himself available for reasonable additional work during the Term of this Agreement in addition to such 60 days per year; provided that SCI will in such event compensate Spokesperson for such additional work (including portal-to-portal travel required for such work) at the rate of $2,000.00 per day.

Spokesperson will be required to travel as necessary for these appearances. SCI will make a best effort to schedule all appearances around Spokesperson's existing schedule. Spokesperson shall provide to SCI his personal and professional schedule at least 120 days prior to any events Spokesperson will attend or at which he will appear or prior to travel that is more than five (5) days in duration.

Unless given written notice that he is excused by two-thirds (2/3) of the EC, Spokesperson shall attend the annual SCI Hunter's Convention and August Board meeting and the time spent at these events, including travel time, will not be counted as appearances required towards the 60-day minimum. SCI will pay Spokesperson's reasonable expenses for attending these events. SCI will be required to pay only Spokesperson's reasonable expenses for attending these events, and no daily rate.

Safari Club International Foundation ("SCIF") also may use Spokesperson's services within the parameters of Spokesperson's commitments in the preceding paragraph. For services outside the 60-day commitment required by this Agreement, Spokesperson shall invoice SCI, and SCI agrees to pay for such services by Spokesperson to SCIF. SCIF and SCI shall have a separate agreement for reimbursement by SCIF to SCI for such services.

On or before the 25th day of March, June, September and December of each year, Spokesperson will submit to SCI's Executive Director a quarterly status and progress report describing his monthly activities and his evaluation of the results of his services. In addition, two (2) weeks prior to the date of the Board meetings at the Convention and in August of each year, Spokesperson will provide directly to the members of the Board a report of his activities in electronic format.

The parties recognize that free and open communication with SCI's EC, Board and staff is essential to the satisfactory fulfillment of this Agreement. Therefore, Spokesperson, as determined necessary and requested by SCI, may attend via conference call or in person those portions of meetings of the SCI Senior Leadership Team ("SLT") involving the services under this Agreement. Similarly, as determined necessary and requested by SCI, Spokesperson may attend via conference call or in person those portions of EC and Board meetings involving the services under this Agreement.

Spokesperson shall report to SCI's Executive Director or his designee. SCI's Executive Director have the authority to direct Spokesperson or communicate directives to Spokesperson.

6.   USE OF TITLE

To allow Spokesperson to carry out the functions of this Agreement in the most effective, credible and influential manner, Spokesperson will use the title of "Chief Communications Officer for Safari Club International." Spokesperson understands, acknowledges and agrees that the use of this title does not confer any official and/or legal corporate status upon Spokesperson, including without limitation, any rights and responsibilities provided in SCI's Bylaws, including voting rights, and that Spokesperson's duties, rights and responsibilities are limited to those provided in this Agreement.

7. COMPENSATION AND EXPENSES

*Compensation.* For the services provided by the Spokesperson as provided in Paragraph 5, above, SCI will pay Spokesperson an annual fee as follows: (a) $100,000.00 per year, payable at $8,333.33 per month, or the appropriate prorated amount, for the first year of the initial term of the Agreement; and (b) $120,000.00 per year, payable at $10,000.00 per month, or the appropriate prorated amount, for each year thereafter. The fee amount will be payable on the last day of each month during the term of the Agreement; provided, however, that as also set forth in Paragraph 5 SCI also will compensate Spokesperson for any additional work beyond 60 days per year at the rate of $2,000.00 per day. The fee herein provided shall constitute full payment for the Spokesperson's services to SCI during the term of this Agreement, and the Spokesperson shall not receive any additional benefits or compensation for his services.

*Expenses.* SCI will reimburse Spokesperson for reasonable and customary expenses incurred at SCI's request in connection with such spokesperson services, such as coach air travel and other travel costs up to the applicable maximum per diem amount set forth in Internal Revenue Service Publication 1542. All such costs and expenses shall be itemized by statement and each statement shall be accompanied by substantiating bills, vouchers and credit card statements.

8. CONTRACTOR RESPONSIBLE FOR HIS AGENTS AND EMPLOYEES

The Spokesperson shall select and shall have full and complete control of and responsibility for all agents, employees and subcontractors, if any, employed or used by the Spokesperson and for the conduct of the Spokesperson's independent business, and none of said agents, employees or subcontractors shall be, or shall be deemed to be, the agent, employee or subcontractor of SCI for any purpose whatsoever, and SCI shall have no duty, liability or responsibility, of any kind, to or for the acts or omissions of Spokesperson or such agents, employees or subcontractors, or any of them. Spokesperson agrees to defend, indemnify and hold SCI harmless from and with respect to any and all claims of any kind based on any act or omission of the Spokesperson or Spokesperson's agents, employees or subcontractors. Finally, Spokesperson agrees that he will not discriminate against any of his employees or applicants for employment because of any reason prohibited by applicable federal, state or local law, rule or regulation.

9. CONTRACTOR RESPONSIBLE FOR TAXES AND INDEMNIFICATION

Without limiting any of the foregoing, the Spokesperson agrees to accept exclusive liability for the payment of all or taxes or other payments and contributions required by law, and to reimburse and indemnify, defend and hold SCI harmless for such taxes or contributions or penalties and interest which SCI may be compelled to pay. The Spokesperson also agrees to comply with all valid applicable Canadian or U.S. constitutional, statutory and/or administrative regulations respecting the assumption of liability for such taxes and contributions.

10. MEANS AND METHODS OF WORK

The Spokesperson agrees to furnish services as provided herein as an independent contractor using the Spokesperson's own means and methods.

11.     ASSIGNMENT OF WORK PRODUCT

The Spokesperson hereby assigns SCI the entire right, title and interest for the entire world in and to all work performed, writing(s), report(s), calculation(s), design(s), drawing(s), photograph(s), and any other product or intellectual property made, conceived or reduced to practice or authorized by the Spokesperson, either solely or jointly with others, during the performance of this Agreement or with use of information, materials or facilities of SCI received or used by the Spokesperson during the period in which the Spokesperson is retained by SCI under this Agreement. The Spokesperson shall promptly disclose to SCI all work(s), writing(s), report(s), calculations(s), design(s), or any other product or intellectual property made, conceived, or reduced to practice or authored by the Spokesperson in the course of the performance of this Agreement.

12.     CONTRACTOR WORK PRODUCT OWNED BY SCI

All information developed under this Agreement, of whatever type relating to the work performed under this Agreement, shall be the exclusive property of SCI. All machines, equipment, instruments and products purchased, manufactured or assembled by the Spokesperson pursuant to this Agreement and paid for by SCI shall be the exclusive property of SCI. Spokesperson shall receive prior written approval from SCI for the purchase of any of the foregoing. Upon termination of this Agreement, the Spokesperson shall return such items to SCI or dispose of such items as directed by SCI.

13.     CONFIDENTIALITY OF INFORMATION

The Spokesperson agrees that all data and information about SCI's business, plans, finances, and methods of operation disclosed to, acquired by or developed by the Spokesperson during performance of the work hereunder is and shall remain the exclusive property of SCI. Except for such information and data as can be proven by the Spokesperson to be in or to have entered the public domain through no fault of the Spokesperson or to have been in the Spokesperson's possession prior to disclosure to the Spokesperson by SCI, Spokesperson shall, during the term of the Agreement and thereafter in perpetuity, maintain as confidential and not disclose to third parties or otherwise use, and will prohibit and enjoin the Spokesperson's employees, agents or subcontractors (as applicable) from using, such information except as duly authorized in the conduct of SCI's business or as otherwise authorized in advance in writing by SCI's President. The Spokesperson agrees that such data and information shall be used by the Spokesperson solely for the purpose of performing services for SCI and not for the benefit of any other person or entity whatsoever.

14.     CONFIDENTIALITY OF AGREEMENT

Spokesperson and SCI agree to maintain in strictest confidentiality the terms and existence of this Agreement, and the discussions and negotiations that led to its creation and execution, provided, however, that: (a) Spokesperson and SCI may disclose this Agreement to their immediate families; (b) Spokesperson and SCI may disclose this Agreement in confidence to their respective attorneys, accountants, auditors, tax preparers, and financial advisors; (c) SCI may disclose this Agreement as necessary to fulfill standard or legally required corporate activities, reporting or disclosure requirements; and (d) Spokesperson and SCI may disclose this Agreement insofar as such disclosure may be necessary to enforce its terms or as otherwise

required by law. In making any disclosure permitted under this Paragraph, Spokesperson and SCI shall advise the person(s) to whom disclosure is made of the confidentiality obligations imposed by this Paragraph.

15. NO ASSIGNMENT BY CONTRACTOR

Spokesperson agrees that the services to be performed pursuant to this Agreement shall be performed personally by Larry P. Rudolph. The Spokesperson shall not assign or transfer any rights or obligations under this Agreement without SCI's prior written consent, and any attempted assignment or transfer without such consent shall be void. SCI may, however, assign this Agreement.

16. TERMINATION BY DEATH OR DISABILITY

This Agreement shall automatically terminate upon the Spokesperson's death or disability. In such event, SCI shall be obligated to pay the Spokesperson's estate or beneficiaries only the accrued but unpaid payments and expenses due as of the date of death. For purposes of this Agreement, "Disability" shall mean a physical or mental impairment which substantially limits a major life activity of Spokesperson and which renders Spokesperson unable to perform the services under this Agreement. SCI reserves the right, in good faith, to make the determination of disability under this Agreement based upon information supplied by the Spokesperson and/or his medical personnel. Spokesperson agrees to allow SCI's medical or other personnel and SCI's insurers access to his medical records and to examine him for these purposes.

17. TERMINATION BY NOTICE

Notwithstanding any other provision of this Agreement, upon a recommendation to the Board by two-thirds (2/3) of the entire EC, and approval of said recommendation by a majority of a quorum of the Board at a duly noticed Board meeting, SCI may terminate this Agreement at any time with or without cause upon ninety (90) calendar days' written notice to Spokesperson. The notice of decision to terminate shall also notify Spokesperson whether SCI elects to require Spokesperson to immediately cease the performance of all functions under this Agreement and pay three months' compensation to Spokesperson or require Spokesperson to continue to render services for all or a portion of the following three month period.

Notwithstanding any other provision of this Agreement, Spokesperson may terminate this Agreement at any time by providing ninety (90) calendar days' written notice to the EC, at which time SCI may elect to deem Spokesperson's termination effective immediately, and any obligation of SCI to Spokesperson shall cease immediately. SCI shall be obligated to pay Spokesperson only for any prorated fees remaining unpaid and to reimburse Spokesperson for any unreimbursed expenses.

18. ARIZONA LAW GOVERNS

This Agreement shall be deemed to have been executed and delivered within the State of Arizona, and the rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of Arizona determined without regard to principles of choice of law or conflict of laws provisions.

19. SEVERABILITY

If any provision of this Agreement or the application thereof is held invalid, the invalidity shall not affect other provisions or applications of this Agreement which can be given effect without the invalid provisions or applications and to this end, the provisions of this Agreement are declared to be severable.

20. WAIVER OF BREACH

No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the party waiving the breach.

21. NOTICE

Any notice required to be given pursuant to this Agreement shall be deemed to have been sufficiently given either when served personally or when served by first-class mail addressed to either party. Notices to SCI shall be effective only when addressed to: SCI's Executive Director at 4800 West Gates Pass Road, Tucson, AZ 85745-9490. Notice to the Spokesperson shall be effective only when addressed to: L.P. Rudolph Holdings, LLC, 336 Lakewood Rd., Greensburg, Pennsylvania, 15601 (or another designated by proper notice under this Agreement).

22. COMPLIANCE WITH LAW

Spokesperson shall comply with any and all applicable laws and regulations, which are now in effect or which may become applicable.

23. MUTUAL DRAFTING

Each party has cooperated in drafting and preparation of this Agreement. Hence, this Agreement shall not be construed against any party on the basis that the party was the drafter.

24. MEDIATION/ARBITRATION OF DISPUTES.

(a)   Mediation. Spokesperson and SCI agree to first attempt a mediation of any controversy, claim or dispute between them arising out of or relating to this Agreement, its enforcement or interpretation, or because of an alleged breach, default, or misrepresentation in connection with any of its provisions, or arising out of or relating in any way to the independent contractor relationship between Spokesperson and SCI ("Disputes"). The mediation shall be conducted in Pima County, Arizona before a mediator mutually acceptable to Spokesperson and SCI. The parties agree to make a good faith effort at mediating any dispute prior to filing a claim for arbitration. Each party shall pay one-half (1/2) of the fees and costs of the mediation.

(b)   Arbitration. Should mediation as provided in Paragraph 25(a) above not be successful, any Disputes between Spokesperson and SCI may then be submitted to binding arbitration, to be held in Pima County, Arizona. The party requesting arbitration shall do so within 15 days following the mediator's written notice of the failure of the mediation of the Disputes and failure to request arbitration within this period of time will constitute a waiver of any such claim and such claim will be time barred. The arbitrator shall be selected by mutual agreement of the parties; if none, then by striking from a list of specific arbitrators [or

organizations to supply a panel of arbitrators, such as the American Arbitration Association; provided, however, that this clause does not constitute an agreement to submit any dispute to the American Arbitration Association itself for administration or supervision thereof] In the event either party institutes arbitration under this Agreement, the party prevailing in any such arbitration shall be entitled, in addition to all other relief, to reasonable attorneys' fees relating to such arbitration. The non-prevailing party shall be responsible for all costs of the arbitration, including but not limited to, the arbitration fees, court reporter fees, etc.

25. ENTIRE AGREEMENT

This Agreement supersedes all prior negotiations and agreements, proposed or otherwise, whether written or oral, between the parties concerning consulting services provided by the Spokesperson, and this Agreement constitutes the entire agreement between the parties with respect thereto. This Agreement may be modified only with a written instrument duly executed by each of the parties. No person has any authority to make any representation or promise on behalf of any of the parties not set forth herein and this Agreement has not been executed in reliance upon any representations or promises except those contained herein.

26. HEADINGS NOT CONTROLLING

Headings in this Agreement are used for ease of reference and are not controlling of the interpretation of this Agreement.

DATED: January 27, 2011.

CAMELBACK CONSULTING/
MARKETING, L.L.C.

_[signature]_
Larry P. Rudolph

DATED: January 27, 2011.

SAFARI CLUB INTERNATIONAL

By: _[signature]_

Its: President Elect

# ATTACHMENT A

Events to be attended by Spokesperson include, but are not necessarily limited to, the following:

- Possible Sportsmen's rally on Capitol Hill – February 16, 2011
- North American Wildlife Policy Conference, March 14-19, 2011, Kansas City, Missouri
- AWCP Spring meeting, Kansas City, Missouri
- CSF Industry Challenge and Congressional Shoot-Out, May 9-10, Washington, D.C.
- CIC Annual Meeting, St. Petersburg, Russia
- National Shooting Sports Foundation, Shooting Sports Summit, Louisville, Kentucky
- SCI D.C. Metro Chapter Banquet, Washington, D.C.
- Professional Outdoor Media Association Annual Business Conference, August 11, 2011, Ogden, Utah
- CSP 22nd Annual Banquet & Auction, September 14, 2011, Washington, D.C.
- Association of Fish & Wildlife Agencies Annual Meeting
- NASC "Wine, Wheels and Wildflife," October 12, 2011, Lexington, Kentucky
- PHASA Annual Meeting, South Africa
- Namibian Professional Hunters Association
- Tanzanian Professional Hunters Association
- NASC Annual Meeting

Other events to be named, including the top five largest SCI Chapter Banquets