IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. LAWRENCE P. RUDOLPH, DDS,

Plaintiff,

v.

SAFARI CLUB INTERNATIONAL, RALPH CUNNINGHAM, LARRY HIGGINS, SCOTT CHAPMAN, JOYCE HANLEY, DAVID SMALL and JOHN WHIPPLE,

Defendants.

12cv1710
**ELECTRONICALLY FILED**

**MEMORANDUM OPINION**

Before the Court are two separate Motions to Dismiss Plaintiff's Amended Complaint in this defamation case predicated upon diversity jurisdiction. One Motion to Dismiss was filed by Defendants, Ralph Cunningham, Larry Higgins, Scott Chapman, Joyce Hanley, David Small and John Whipple (hereinafter "Individual Defendants") requesting dismissal of the entire case predicated upon Fed.R.Civ.P. 12(b)(2) claiming this Court lacks personal jurisdiction over them. Doc. No. 32. The other motion, a Partial Motion to Dismiss the Amended Complaint, was filed pursuant to Fed.R.Civ.P. 12(b)(6) by Defendant Safari Club International ("Safari Club") and Defendant Whipple requesting Count II, a claim for defamation by innuendo, be dismissed. Doc. No. 34. Plaintiff has filed Briefs in Opposition to these Motions to Dismiss. Doc. Nos. 37 and 38.

## I. Standard of Review

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge a Court's exercise of personal jurisdiction. "Once a defendant challenges a court's exercise of personal

jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). To meet its burden, Plaintiff must establish "[a] nexus between the defendant, the forum and the litigation." *Deutz AG*, 270 F.3d at 150.

"[I]n reviewing a motion to dismiss under Rule 12(b)(2) [the court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142, n. 1 (3d Cir. 1992)). Plaintiff need only to establish a *prima facie* case for personal jurisdiction over the defendant to overcome a 12(b)(2) motion. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004). A resolution of a factual issues may be required to establish personal jurisdiction under a 12(b)(2) motion and thus a party may introduce extrinsic evidence beyond the pleadings to do so. *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67, n. 9).

**B. Rule 12(b)(6)**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed.R.Civ.P. 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell*

*Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and

where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563, n.8.

**II. Factual Background**

The following facts taken from Plaintiff's Amended Complaint are accepted as true solely for the purposes of deciding the two Motions to Dismiss presently before the Court.

Plaintiff, a Pennsylvania resident, was a member of Defendant Safari Club for approximately 25 years and served as its President from 2009 to 2011. Doc. No. 24, ¶¶ 4, 18, 21. Defendant Safari Club is a non-profit organization which was organized and maintains a principal place of business in Arizona, and has over 50,000 members worldwide. Id., ¶¶ 5, 10[sic.][1]. After serving as President, Plaintiff "signed an employment contract" with Defendant Safari Club to perform public relation functions for the Club as its "Chief Communications Officer." Id., ¶ 24.

In February of 2012, at its annual convention, which was held in Las Vegas, Nevada, a member of Defendant Safari Club, Mr. Babaz, "circulated false rumors about Plaintiff." Id., ¶¶ 26[sic][2], 27. These rumors suggested that: (1) Plaintiff was having a long-term affair with a woman in Atlanta, (2) used his title as President of Safari Club to seduce this mistress, (3) was in danger of losing his Weatherby Foundation award because of his "adulterous behavior," and

[1] Within the Amended Complaint, Plaintiff has two paragraphs numbered "10," two paragraphs numbered "11," and two paragraphs numbered "26." See doc. no. 24, pp. 2, 4. The reference to paragraph 10, above, is the second paragraph 10 referenced in the Amended Complaint, located immediately after the subheading "Factual Background."

[2] The reference to paragraph 26, above, is the second paragraph 26 referenced in the Amended Complaint, located immediately after the subheading "Factual Background of the BOI Petition Filed against Plaintiff."

(4) Plaintiff threatened to fire the host of the Safari Club's television show and cancel the show. Id., ¶¶ 28-31. After Mr. Babaz published these rumors to other Safari Club members, a confrontation between Plaintiff and Babaz ensued, and ultimately Babaz filed a "false BOI [Board of Inquiry][3] petition against Plaintiff alleging that Plaintiff acted improperly during the Las Vegas convention" and during a hunt in Mexico in 2006. Id., ¶¶ 32-37.

Defandant Safari Club's BOI has a detailed procedure in place which: (1) requires the accused club member to submit a written response to allegations of misconduct, (2) requires the BOI to investigate accusations against the accused member after receiving the accused member's written response, and (3) guarantees the accused member a hearing to contest any accusations which the BOI believes have a basis in fact. Id., ¶¶ 39-43.

On March 27, 2012, Plaintiff submitted a written response to the two accusations leveled against him by Babaz. Id., ¶¶ 38, 44. On May 1, 2012, the BOI issued its findings of a violation along with its recommendation that Plaintiff be sanctioned. Id., ¶ 45. The May 1, 2012 BOI document contained several other claims which were not submitted via a petition by Babaz or any other Safari Club member. Id., ¶¶ 46-47. The BOI Rules of Procedure entitled Plaintiff to request a hearing (on or before May 31, 2012) with respect to the charges leveled against him. Id., ¶ 48.

On May 12, 2012, Defendant Safari Club held a Board meeting in Washington, D.C. where elections for the 2012-2013 term took place. Id., ¶ 49. Plaintiff was a candidate for the Secretary position. Id., ¶ 50. Of the purported 320 members on its Board of Directors, Defendant Safari Club knew that approximately 160 Board members would be participating, and

[3] The BOI is a standing committee comprised of five members within Defendant Safari Club which is charged with investigating and ruling on issues related to member misconduct. All of the Individual Defendants identified in the first paragraph of this Opinion, with the exception of Defendant Whipple, were members of the BOI. Doc. no. 24, ¶¶ 13-15.

did in fact, participate in this Board meeting, including eight members from Pennsylvania. Id., ¶¶ 12, 51-53. BOI members knew in advance that a "significant number" of Board members would attend the May 12, 2012, Board Meeting (physically or virtually), and "collectively decided" that Defendant Cunningham[4] should publicly announce the charges against Plaintiff at this Board meeting. Id., ¶¶ 54-58.

Defendant Cunningham knew that making defamatory comments about Plaintiff during this Board meeting would influence the elections, causing Plaintiff to be defeated for elected office and lose his employment as Chief Communications Officer for Defendant Safari Club, as well as lose his membership in the Club. Id., ¶¶ 59-61. The BOI "also knew that Plaintiff[,] as a resident of Pennsylvania[,] would feel the brunt of these defamatory statements in his home state." Id., ¶ 62.

On August 25, 2012, Safari Club held a Board meeting in Jackson Hole, Wyoming. Id., ¶ 121. During this meeting, BOI charges against Plaintiff were read by Defendant Cunningham and the Board voted to expel Plaintiff from his membership in Safari Club, terminate his employment contract as Chief Communication Officer, and remove his name from all record book entries and awards. Id., ¶¶ 122-123. The Amended Complaint does not indicate whether any person from Pennsylvania was present, physically or virtually, at this August 25, 2012, Board meeting.

## III. Discussion

### A. The Individual Defendants' Motion to Dismiss – Personal Jurisdiction

A United States District Court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state. *Time Share*, 735

---

[4] Defendant Cunningham is a resident of Texas and acted as Chairman of Safari Club's BOI. Doc. no. 24, ¶¶ 6, 14.

F.2d at 63. As noted above, the burden of proving the Court's personal jurisdiction is on the Plaintiff, and Plaintiff cannot solely rely upon the bare pleadings alone to meet this burden. *Patterson*, 893 F.2d at 604.

In ruling on a motion to dismiss for lack of personal jurisdiction, this Court must determine whether the exercise of personal jurisdiction would violate due process under the Fourteenth Amendment. See *International Shoe, supra.* The United States Supreme Court has determined that "[d]ue process is satisfied if the non-resident defendant has sufficient contacts with the forum state so that the maintenance of a suit against him in that locale does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 316.

In reaching a decision as to whether this Court has personal jurisdiction over the Individual Defendants, the Court must apply the analysis articulated by the United States Court of Appeals for the Third Circuit in *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982). First, this Court must determine whether Plaintiff's claims in this case arise from the Individual Defendants' forum-related activities or from nonforum-related activities. *Id*. at 588.

If the cause of action arises from forum-related activities, then this Court must determine whether there are sufficient minimum contacts with Pennsylvania (the forum state) arising out of that transaction thereby conferring "specific" jurisdiction. *Id*. The United States Court of Appeals for the Third Circuit established a three-part test for determining if "specific" jurisdiction exists:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

On the other hand, if Plaintiff's claims arise out of nonforum-related activities, Plaintiff has the burden of showing that the Individual Defendants, in matters other than the claims being pursued, maintained "continuous and substantial" contacts with Pennsylvania (the forum state) thereby conferring "general" jurisdiction. *Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir. 1981). This latter test for "general" jurisdiction is more difficult to meet in that the Individual Defendants' activities in Pennsylvania (the forum state) must be "extensive and persuasive." See *Reliance Steel*, 675 F. 2d at 588.

When a defendant's contacts with the forum state are not otherwise sufficient to establish personal jurisdiction under the above theories of "specific" or "general" jurisdiction, and when the plaintiff has alleged that the defendant has committed an intentional tort, the Court must also analyze the contacts under the "effects test" as established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, the plaintiff must show that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort: and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1989).

**1. General Personal Jurisdiction**

In this case, Plaintiff's brief does not address general personal jurisdiction. See doc. no. 38. This Court concludes that Plaintiff cannot meet the burden of establishing general personal jurisdiction because there are no allegations in either the Amended Complaint or the affidavits which Plaintiff attached to his Brief in Opposition to the Individual Defendants' Motion to

Dismiss, that the Individual Defendants, in matters other than the claims being pursued, maintained "continuous and substantial" contacts with Pennsylvania. Therefore, the Court finds that Plaintiff has failed to establish general personal jurisdiction over any of the Individual Defendants.

**2. Specific Personal Jurisdiction**

With respect to specific personal jurisdiction, Plaintiff must meet the three-prong test: (1) the Individual Defendants had to "purposefully direct their activities" at Pennsylvania; (2) the litigation must "arise out of or relate to" at least one of those activities; and (3) if the prior two requirements are met, this Court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" It is the first prong of this test that Plaintiff is unable to meet.

As to the first prong, Plaintiff contends that when the individual BOI members (meaning the Individual Defendants, with the exception of Defendant Whipple) allowed Defendant Cunningham to publish a list of the defamatory charges pending against Plaintiff on two occasions (during the May 12, 2013, and the August 25, 2012, Board meetings) and these Defendants purposefully directed their activities at the forum state of Pennsylvania. Plaintiff argues that the BOI members knew that Plaintiff was a Pennsylvania resident, knew that he would "suffer harm in his home state." This knowledge formed the basis for the members' collective decision to direct the defamatory remarks into the Commonwealth of Pennsylvania by publishing these remarks on May 12, 2012, to eight Pennsylvanians who were Board members of Defendant Safari Club as well as 152 other members who were not Pennsylvanians.

Although Plaintiff contends in his Brief in Opposition to the Motion to Dismiss that these defamatory statements were made so that Plaintiff would "suffer harm in his home state,"

Plaintiff's Amended Complaint indicates otherwise. Specifically, Plaintiff's Complaint alleges that the defamatory comments were made with an improper motive, "inasmuch as the BOI was fueled by political motives to destroy Plaintiff's reputation with [Safari Club] in the context of an election of [Safari Club] officers." Doc. no. 24, ¶ 81. The Amended Complaint also alleges that the BOI's "publication of known defamatory statements was intended to convey, and did convey, to the community at large, the impression that Plaintiff lacked moral character." Id., ¶ 93. In addition, the Amended Complaint alleges that the BOI knew that the defamatory comments made during this May 12, 2012, Board meeting would influence the elections, cause Plaintiff to be defeated for elected office, and ultimately lose his employment as Chief Communications Officer for the Club, as well as lose his membership in the Club. Id., ¶¶ 59-61. The Club is a worldwide organization. Id., ¶¶ 5, 10[sic.].

The affidavits supplied by Plaintiff are essentially silent on the issue as to whether any of the Individual Defendants purposefully directed their activities on May 12, 2012, to the forum state of Pennsylvania. See doc. nos. 38-1 and 38-2. These two affidavits fail to provide any additional information concerning any additional contact(s) the Individual Defendants had with Pennsylvania. Thus, the only apparent contact the Individual Defendants had with the Commonwealth of Pennsylvania (the forum state) occurred via Defendant Cunningham during the May 12, 2012, Board meeting.[5]

Plaintiff's Brief in Opposition notes that a single contact can be sufficient to demonstrate "purposeful direction" if that contact is "substantial." See doc. no. 38, p. 6, relying in part on *Rusack v. Harper*, 470 F.Supp. 285 (M.D. Pa. 1978). While this Court does not disagree with the legal principle cited by Plaintiff, this Court notes that the allegations of the Amended Complaint and the averments in the Affidavits suggest that all of the Individual Defendants made

[5] The letter written by Defendant Whipple to Philip Ripepi will be addressed *infra*. under subheading "3."

the alleged defamatory remarks to prevent Plaintiff from attaining yet another Officer's post (*i.e.,* Secretary) of Defendant Safari Club, a worldwide organization as well as expel him from the Club and strip him of Club awards. In other words, the Individual Defendants purportedly intended to besmirch Plaintiff's reputation during the May 12, 2012 Board meeting to prevent him from obtaining office within Safari Club and ultimately lose his membership in the Club, not to embarrass him in front of eight Pennsylvanians. If the facts as alleged in the Amended Complaint are deemed to be true, the defamation was directed at ruining Plaintiff's chances to obtain a world-wide officer's position – not a local chapter's officer's position – and lose his membership in the world-wide organization – not his membership in Pennsylvania chapter.

Accordingly, this Court finds that Plaintiff has failed to meet the first part of the three-part test with respect to specific personal jurisdiction, and as such has likewise failed to meet the third part of the test pertaining to whether the exercise of jurisdiction would otherwise comport with 'fair play and substantial justice. Thus, the Court holds that the Individual Defendants are not subject to the specific personal jurisdiction of this Court.

**3. Personal Jurisdiction via the "Effects Test"**

As noted above, when a defendant's contacts with the forum state are not otherwise sufficient to establish personal jurisdiction under general or specific theories, and the plaintiff has alleged that the defendant has committed an intentional tort, the court must also analyze the contacts under the "effects test" as established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, the plaintiff must show that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort: and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1989).

As applied in this case, this test, if met, would allow the Court to assert jurisdiction over the Individual Defendants even though the contacts with the forum state alone are too insignificant to comport with the requirements of due process. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). The crucial aspect of the effects test is that a plaintiff must demonstrate that a defendant "expressly aimed its tortious conduct at the forum." *IMO Industries, Inc.*, 155 F.3d at 265. The plaintiff's residence does not on its own create jurisdiction over nonresident defendants. *Marten*, 499 F.3d at 298.

"To establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.*, citing *IMO Indus. Inc.*, 155 F.3d at 266. "[T]he effects test asks whether the plaintiff felt the brunt of the harm in the forum state, but it also asks whether defendants knew that the plaintiff would suffer the harm there and whether they aimed their tortious conduct at that state." *Marten*, 499 F.3d at 299 (emphasis in original).

Plaintiff's Brief in Opposition cites to his Complaint where he alleges that he "suffered the brunt of the harm caused by the tortious conduct" in Pennsylvania, the forum state. See *i.e.,* doc. no. 24, ¶ 71. However, these allegations are conclusory. The precise brunt of harm Plaintiff purportedly suffered has not been pled nor clarified via the Affidavits (doc nos. 38-1 and 38-2). For example, there is no allegation that Plaintiff has divorced, or is in the midst of divorce proceedings, as a result of the alleged defamatory statements made concerning his alleged adultery. There are likewise no allegations explaining how Plaintiff's allegedly "ruined" reputation and/or standing as hunter within the Pennsylvania hunting community constitutes

"harm." Allegations such as these were crucial to establishing whether Plaintiff in this case "felt the brunt of the harm" in the Commonwealth of Pennsylvania, the forum state.

In addition to failing to establish whether he felt the brunt of the harm in Pennsylvania, Plaintiff also failed to establish facts to support his allegations as to whether the Individual Defendants knew that he would suffer the harm in Pennsylvania and whether the Individual Defendants aimed their tortious conduct at Pennsylvania. As per this Court's analysis with respect to specific personal jurisdiction, the Court finds that Plaintiff failed to allege or otherwise establish that the Individual Defendants aimed their conduct at Pennsylvania. As noted above, the Plaintiff has established the Individual Defendants wanted Plaintiff banished or eliminated from the world-wide organization of Safari Club, not merely a local (meaning a Pennsylvania-based) chapter. Given Plaintiff's allegations concerning the "political motive" of the Individual Defendants, these defamatory statements would have been made during the Board meetings regardless of the number of Pennsylvanians (if any) who participated in the Board meeting. Per Plaintiff, the Individual Defendants' goal was to publish the defamatory statements to the Board members so that Plaintiff would lose the election and his membership; not to rout him from Pennsylvania membership.

Finally, although Plaintiff did plead that Individual Defendant Whipple sent a letter to Philip Ripepi, a Pennsylvania resident and "a business and hunting colleague of Plaintiff[,]" there are no allegations concerning how this "harmed" Plaintiff. In fact, Ripepi's affidavit which Plaintiff proffered in support of his position, merely indicates (1) that he received a letter from Defendant Whipple, and (2) the content of that letter was the same as the letter found at doc. no. 34-2. Neither the affidavit submitted by Ripepi, nor the content of the document attached at doc. no. 34-2, supports a finding that Defendant Whipple or any of the other Individual

Defendants aimed their tortious conduct at Pennsylvania. Likewise, neither Ripepi's affidavit nor the content of document 34-2 provides this Court with a clear idea of the "harm" purportedly sustained by Plaintiff. Rather all of the non-conclusory information supplied by Plaintiff's Complaint illustrates that the Individual Defendants wanted Plaintiff banished or eliminated from the Safari Club.

Accordingly, this Court finds that Plaintiff failed to meet the requirement of the "effects test" and thus, has failed to establish personal jurisdiction over any of the Individual Defendants.

**B. Safari Club's 12(b)(6) Motion**

Defendants Safari Club and Whipple filed a Motion to Dismiss Count II of the Complaint, which asserts a claim for defamation by innuendo against them.[6] Defamation by innuendo is recognized by the Commonwealth of Pennsylvania as an actionable tort. Defamation by innuendo has been defined by Pennsylvania state courts as when the words utilized themselves are not defamatory in nature, however, the context in which these statements are issued creates a defamatory implication. *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (1981). See also *Baker v. Lafayette College*, 532 A.2d 399, 402 (Pa. 1987) (statements alleged to be defamatory must be viewed in context). In order to succeed on such a claim, the "innuendo must be warranted, justified and supported by the publication." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. 1992) (quoting *Thomas Merton*, 442 A.2d at 217).

The question of whether innuendo is actionable as defamatory is a question of law. *ToDay's Housing v. Times Shamrock Communications, Inc.,* 21 A.3d 1209, 1215 (Pa.Super. 2011) citing *Sarkees v. Warner-West Corp.*, 37 A.2d 544, 546 (Pa. 1944). The legal test to be

---

[6] The Court notes that the Individual Defendants sought to join Defendants Safari Club's and Whipple's Motion to Dismiss Count II of the Amended Complaint. Because this Court has deemed that Plaintiff failed to establish personal jurisdiction over the Individual Defendants, including Defendant Whipple, their request for joinder in this argument is moot.

applied is whether the challenged language could "fairly and reasonably be construed" to imply the defamatory meaning alleged by a plaintiff. *Id*.

In the instant matter the defamation by innuendo claim pertains to "a letter signed by Defendant Whipple" stripping Plaintiff of all of his hunting awards and record book entries. Doc. no. 24, ¶ 153. According to Plaintiff's Amended Complaint, "Defendant Whipple mailed the letter referenced in averment 162[7] to the Conklin Foundation Board, located in Pittsburgh, Pennsylvania." Doc. no. 24, ¶ 154. Plaintiff's Amended Complaint alleges that the innuendo evinced by this letter is that "Plaintiff is a dishonest hunter and man and lends approval to all the underlying defamatory charges brought by [the Safari Club] and the BOI." Doc. no. 24, ¶ 155.

The Court first notes that Plaintiff failed to attach whatever letter his Amended Complaint referenced to the Amended Complaint. Defendants' Safari Club and Whipple's Motion to Dismiss Count II did attach a letter as an exhibit, and they claim that this letter is the one at issue.[8] See Doc. no. 34-2. The entire letter attached by Defendants reads as follows:

> August 29, 2012
>
> Camelback Consulting/Marketing, L.L.C.
> C/O L.P. Rudolph Holdings, LLC
> 336 Lakewood Rd.
> Greensburg, Pennsylvania 15601
>
> Attention: Dr. Larry P. Rudolph
>
> Re: Removal of Record Book Entries and all SCI Awards

[7] The Court notes that no averment or paragraph 162 exists in the Amended Complaint.

[8] As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. *Angelastro v. Prudential-Bache Sec., Inc*., 764 F.2d 939, 944 (3rd Cir. 1985). However, an exception to the general rule is that a "document integral to or explicitly relied upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997). See also *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[D]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered") (quoting 62 Fed. Proc., L.Ed. § 62:508).

> Dear Dr. Rudolph:
>
> This is to notify you that on August 25, 2012, subsequent to your expulsion from SCI by the Board of Directors, a separate action was taken by the Board to remove all of your Record Book entries, to remove your name from all World Hunting Awards you had qualified for, and to remove your name from all other SCI awards.
>
> In our capacities as SCI President and SCI Record Book & World Hunting Awards Committee Chairman, we are, most sincerely,
>
> /s
> John Whipple, President SCI
>
> /s
> Herb Atkinson, RB/WHA Chair SCI

Doc. no. 34-2.

The contents of the letter at issue are tantamount to this Court's determination of whether there has been defamation by innuendo. The Amended Complaint failed to attach the letter (or a representative letter – see doc. no. 34, ¶ 131). Instead of attaching the letter, Plaintiff alleges that, "[t]he contents of the aforesaid letter were defamatory inasmuch as it portrayed Plaintiff as not deserving of his hunting accomplishments . . . to be a person that [Safari Club] did not want to associate with . . . and otherwise falsely substantiated the BOI charges leveled against Plaintiff." Id., ¶¶ 133-134.

Considering the letter reproduced by Defendant Safari Club in its Brief in Support of its Motion was sent to Plaintiff and not a third party, this Court does not believe that it is the letter referenced by Plaintiff in his Amended Complaint. Thus, the Court is constrained to deny Defendant Safari Club's Motion to Dismiss Count II of the Amended Complaint – not on a substantive basis, but because the Court is unable to apply the legal test as to whether the <u>challenged language</u> could fairly and reasonably be construed to

imply the defamatory meaning alleged Plaintiff. Without the correct letter and the challenged language in front of it, this Court cannot decide this issue.

Thus, the Court must deny Defendant Safari Club's Motion to Dismiss Count II of the Amended Complaint, albeit without prejudice to re-raise this matter in a Motion for Summary Judgment (if appropriate) once the correct letter is produced to this Court.

**IV. Conclusion**

Based on the foregoing law and authority, this Court will grant Defendants Cunningham's, Higgins', Chapman's, Hanley's, Small's, and Whipple's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. The Court will deny Defendant Safari Club's Motion to Dismiss Count II pursuant to Fed.R.Civ.P. 12(b)(6) without prejudice to re-raise this matter at a later point in time, in a Motion for Summary Judgment (if appropriate). An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel