```
 1  (REPORTER'S NOTE:  Following is an unedited
 2  version of the transcript referenced herein.
 3  This rough draft is being provided to counsel
 4  for purposes of work product only and may not
 5  be used as evidence, for purposes of
 6  impeachment, or for any other purpose in any
 7  forum whatsoever.  The court reporter will
 8  hereafter edit the transcript, making
 9  significant and/or insignificant changes to the
10  transcript.  You may not rely on page and line
11  numbers.  Please do not provide this rough
12  draft to any counsel or other parties outside
13  of your law firm.)
14  DR. LAWRENCE P. RUDOLPH, D.D.S. v PAUL  BABAZ.
15  DEPOSITION OF PAUL D. BABAZ
16  May 30, 2013
17  Taken by Charles E. Steele
18  Reported by Gayla Cagle
19  PAUL D. BABAZ,
20      being first duly sworn, was examined and
21      testified as follows:
22  CROSS-EXAMINATION
23  BY MR. STEELE:
24      Q    Mr. Babaz, my name is Charlie
25  Steele.  I just met you.  I'm an attorney for
```

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

```
 1  for SCI Foundation.
 2           I'm looking at state
 3  registrations.  I think there might be a few
 4  new states added on here.  I don't have the
 5  list in front of me to verify.
 6      Q    But the states that are on there are
 7  accurate?
 8      A    I believe so.  Without having my
 9  records from my office, I really couldn't tell
10  you for sure.  But other than that, I think
11  everything is, for the most part, accurate
12  aside from what I've corrected.
13      Q    Are you licensed in Pennsylvania,
14  sir?
15      A    Yes, sir.
16      Q    All right.  Now, are you paid fees
17  in the state of Pennsylvania to be a licensed
18  financial advisor?
19      A    No, sir.
20      Q    What are you licensed to do in
21  Pennsylvania?
22      A    I am licensed in Pennsylvania for
23  securities, my series seven.  It allows me to
24  conduct my business in Pennsylvania.
25      Q    And how long have you been licensed
```

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

1  asking him for?

2     A     It's pretty detailed financial

3  information, other assets held elsewhere,

4  liabilities held elsewhere, information about

5  Stanley, children, grandchildren, whatever the

6  case maybe.

7     Q     On page three of this Exhibit 2, it

8  says, my philosophy, and it's attributed to

9  you; correct?

10          MS. RYAN:  Objection.  The document

11 speaks for itself.

12    Q     Do you believe that the my

13 philosophy in this document is attributed to

14 you as being your philosophy?

15          MS. RYAN: Objection as to form.

16    A     I'm going to say no because I didn't

17 write this.  This is a Morgan Stanley, I guess

18 you can call it Morgan Stanley advertisement.

19    Q     And do you think it's inaccurate

20 with respect to you in any measure?

21          MS. RYAN:  Objection as to form.

22    A     In any measure?

23    Q     In other words, is there any

24 inaccuracies here, if we define inaccuracies as

25 this doesn't reflect how I conduct my business

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

1  as an investment advisor?
2         MS. RYAN:  Same objection.
3     A    I'm not sure how to answer that,
4  honestly.  For the most part, generally
5  speaking, this philosophy, as far as my
6  personal philosophy, generally speaking, you
7  could say it is accurate.
8     Q    I'm trying to, before we leave this
9  document, and I'm not going to leave it until I
10 understand, what you might disagree about with
11 respect to the representations in this document
12 as it relates to how you conduct yourself as a
13 financial advisor?
14        MS. RYAN:  Objection as to form.
15    A    Under the my philosophy section,
16 those two paragraphs, that's concurrent, I
17 guess you could consider that, generally
18 speaking, or however you phrase it, I agree
19 with it as far as a philosophy goes.  But like
20 I said, this is a Morgan Stanley website.  I
21 didn't write this.
22    Q    But you have seen it?
23    A    Honestly, I can't recall if I did or
24 not.
25    Q    Did you agree with me that this

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

```
 1  of account it is.
 2       Q    Tell me about that.
 3            MS. RYAN:  Same objection.
 4       Q    Like Larry's account, how would you
 5  earn a living or make money being Larry's
 6  financial advisor?
 7       A    It just depends what he was doing or
 8  wanted to do.
 9       Q    Okay.  Give me some examples.
10       A    Again, context?  You've got to give
11  me more specifics.
12       Q    Did you ever make any money
13  representing Larry as a financial advisor?
14       A    I'm sure I did, yes.
15       Q    Do you recall how you did it?
16       A    On Larry's particular account, when
17  he had an account with me?
18       Q    Yes.
19       A    He had one account that was fee
20  based.  Okay?  That's mainly how -- the
21  majority of my business is fee based.  We
22  charge a flat fee to manage money.
23       Q    Tell me how those flat fees work, if
24  you can.
25       A    How a flat fee works?
```

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

40

```
 1  to talk about, yes, I will call the client.
 2       Q    Do you have any other clients in
 3  Pennsylvania other than Bianca and Larry
 4  Rudolph?
 5            MS. RYAN:  Objection as to time or,
 6  excuse me, form.
 7       Q    Any time?
 8       A    Well, Larry and Bianca aren't
 9  clients of mine now.
10       Q    I understand.
11       A    I do have a few other accounts in
12  Pennsylvania.  At the time that Larry and
13  Bianca were an account, I'm sure I had some
14  accounts in Pennsylvania.  I couldn't tell you
15  exactly who or how many.
16       Q    Would Morgan Stanley have those
17  records?
18       A    I have no idea.
19       Q    And I'm just asking you an estimate,
20  if you can, how many clients in Pennsylvania
21  you had from 2008 until 2012.
22       A    If I had to make an estimate from
23  2008 to 2012 how many Pennsylvania accounts I
24  had, a dozen.
25       Q    And do you have any idea strike
```

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

1  that.
2           Do you have any estimate of what the
3  collective value of those potential 12 accounts
4  might be?
5           MS. RYAN:  Objection as to form.
6      A    I don't have much business in
7  Pennsylvania.  4 million, four and a half
8  million, maybe.
9      Q    Did you act as financial advisor to
10 all of those 12 clients?
11     A    If those accounts have an account at
12 Morgan Stanley, myself as broker of record, I
13 would be an advisor, yes, to those accounts.
14     Q    While Larry and Bianca were clients
15 of yours, how would they contribute their money
16 to their account at Morgan Stanley?
17     A    You mean how would they deposit
18 funds?
19     Q    Yes.  You are good at rephrasing the
20 question.
21     A    I'm sorry.
22     Q    No, you are very good.
23     A    The only deposit that I ever recall
24 making would have been an account transfer.
25     Q    So he moved money from somebody else

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

1  go out and cold call.  I don't go out and
2  solicit anyone.  Clients are referred to me.
3      Q    Did you ever go to Pennsylvania to
4  visit any of your 8 to 12 clients during 2008
5  to 2012?
6      A    No, sir.
7      Q    Did you talk to them on the phone?
8      A    My clients in Pennsylvania?
9      Q    Yes.
10     A    During 2008 --
11     Q    2008 to 2012.
12     A    Yes, sir, I did talk to them on the
13 phone.
14     Q    Did you advise them about investment
15 strategies on the phone?
16          MS. RYAN:  Objection as to form.
17     A    If I was talking to a client about
18 investments and strategy, yes.
19     Q    And did you keep in regular contact
20 with them?
21     A    Depends on the client.
22     Q    And did you send them e-mails?
23     A    It depends on the client.
24     Q    Would it be fair to say you
25 telephoned and sent several of those 8 to 12

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**

```
 1  clients from 2008 to 2012 e-mails and a
 2  telephone?
 3       A     Several of the clients, that would
 4  not be accurate.
 5       Q     Tell me how many you would
 6  estimate.
 7       A     Maybe six or eight.
 8       Q     So you are telling me --
 9       A     And that's an estimate.  I have no
10  idea offhand.
11       Q     You are not telling me, though, sir,
12  that you had 8 to 12 clients in Pennsylvania,
13  and you didn't communicate with them?
14       A     Can you rephrase that?
15       Q     Sure.  You are not telling me, are
16  you, that of these 8 to 12 clients in
17  Pennsylvania between 2008 and 2012, you didn't
18  regularly communicate with them?
19             MS. RYAN:  Objection as to form.
20       A     I have some accounts that I don't
21  communicate with very regularly.
22       Q     But would you agree with me that
23  these 8 to 12 accounts between 2008 and 2012,
24  you were monitoring and managing the money in
25  them?
```

48

```
 1      A     One more time.
 2      Q     Could you try it and if it doesn't
 3 work, I will be more than happy to try to
 4 rephrase it.
 5      (whereupon the court reporter read back
 6      the referred-to portion as follows:)
 7
 8      (whereupon the reading back was
 9      concluded.)
10      A     Would I agree the clients I had 8 to
11 12 estimates we are talking about in
12 Pennsylvania, you are asking me if I monitored
13 or managed accounts?
14      Q     Yes.
15      A     Yes.
16      Q     Did you do that yourself or did you
17 have somebody else working for you who did
18 that?
19      A     It depends on the client.
20      Q     Did you do a lot of it yourself,
21 though?
22      A     It depends on the client.
23      Q     Did you do some of it yourself?
24      A     Again, it depends on the client,
25 but, yes, I did manage.  Sorry.  Your questions
```

**EXHIBIT A-Memorandum in Opposition to Motion to Dismiss**