IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DR. LAWRENCE P. RUDOLPH, DDS,
and CAMELBACK CONSULTING, LLC

        Plaintiff,

v.

SAFARI CLUB INTERNATIONAL, and
PAUL BABAZ,

        Defendant.

12cv1710

**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

This case (docket number 12-cv-1710) was recently consolidated with a newer lawsuit initiated by Plaintiff Rudolph against Defendant Babaz (docket number 13-cv-408). Before Plaintiffs Rudolph and Camelback Consulting sued Defendant Babaz, Plaintiff Rudolph sued other individuals (see doc. no. 24 at docket no. 12-1710), and those other individuals filed a Rule 12(b)(2) Motion to Dismiss, which this Court granted. See doc. nos. 41-42.

Presently before the Court, is a Motion to Dismiss the Amended Complaint filed by Defendant Babaz in this recently consolidated case. See Motion to Dismiss, doc. no. 47 at docket no. 12-1710; and the Amended Complaint, doc. no. 10 at docket no. 13-408. In his Motion to Dismiss, Defendant Babaz requests dismissal of the entire case predicated upon Fed.R.Civ.P. 12(b)(2), claiming this Court lacks personal jurisdiction over him. Doc. No. 47. The motion was also filed pursuant to Fed.R.Civ.P. 12(b)(6) and 12(e). See doc. no. 48. Plaintiffs have filed a Brief in Opposition to this Motion to Dismiss. Doc. No. 50.

**I. Standard of Review**

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge a Court's exercise of personal jurisdiction. "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). To meet its burden, Plaintiff must establish "[a] nexus between the defendant, the forum and the litigation." *Deutz AG*, 270 F.3d at 150.

"[I]n reviewing a motion to dismiss under Rule 12(b)(2) [the court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142, n. 1 (3d Cir. 1992)). Plaintiff need only to establish a *prima facie* case for personal jurisdiction over the defendant to overcome a 12(b)(2) motion. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004). A resolution of a factual issues may be required to establish personal jurisdiction under a 12(b)(2) motion and thus a party may introduce extrinsic evidence beyond the pleadings to do so. *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984). "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67, n. 9).

**II. Factual Background**

The following facts taken from Plaintiffs' Amended Complaint are accepted as true and relevant solely for the purposes of deciding the Motion to Dismiss presently before the Court.

2

Plaintiff Rudolph resides in the Commonwealth of Pennsylvania. Doc. no. 10 at docket no. 13-408, ¶ 4. Plaintiff Camelback Consulting, LLC, has a registered address in Phoenix, Arizona, but alleges it is "owned and operated" by Plaintiff Rudolph in Pennsylvania, and that Plaintiff Rudolph is "its managing owner, investor, and income recipient." Id. at ¶¶ 5-6. Defendant Babaz has a mailing address in Atlanta, Georgia. Id. at ¶ 6. Defendant Babaz was employed by Morgan Stanley. Id. at ¶ 25.

Plaintiff Rudolph and Defendant Babaz is/was members of Safari Club International, and were "political opponents" within that organization. Id. at ¶¶ 12, 36-37. Plaintiff Rudolph had an investment account with Morgan Stanley, and Defendant Babaz was Plaintiff Rudolph's financial advisor. Id. at ¶¶ 26-27.

Plaintiffs also supplied the Court with additional information to help support their jurisdictional arguments. Based on Plaintiffs' several exhibits, the Court notes that Defendant Babaz admitted to having about twelve clients in Pennsylvania from 2008 to 2012. Doc. no. 50-1, p. 6. He testified that the collective value of those Pennsylvania accounts would have been about four- to four-and-a-half million dollars. Id., p. 7. He testified that he never personally visited any of his Pennsylvania clients in Pennsylvania, and he maintained varying levels of telephone and email contact with those clients. Id., pp. 8-10.

Specifically, with respect to Plaintiff Rudolph, the Court notes Plaintiffs produced: emails dated November 25, 2008, between Plaintiff Rudolph and Defendant; emails dated July 17, 2009 through July 20, 2009, concerning the allocation of Plaintiff Rudolph's investment funds; and an email sent from Plaintiff Rudolph to Defendant on September 6, 2009 asking about rates and costs, and requesting a separate monthly statement. See doc. no. 50-2.

The remaining two exhibits are comprised of: website screenshots of Defendant's name and profile from the Morgan Stanley website (doc. no. 50-3), a spreadsheet concerning the value of Plaintiff Rudolph's accounts (doc. no. 50-4), and Plaintiff Rudolph's year-end investment information / Form 1099 reporting information for years 2008 through 2012. Doc. no. 50-5.

**III. Discussion**

Defendant Babaz raises the issue of personal jurisdiction as his primary argument in support of a dismissal of the Amended Complaint against him. As established by this Court in its prior Opinion (albeit related to <u>other</u> individuals who were named by Plaintiff Rudolph as Defendants in this case):

> A United States District Court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state. *Time Share*, 735 F.2d at 63. As noted above, the burden of proving the Court's personal jurisdiction is on the Plaintiff, and Plaintiff cannot solely rely upon the bare pleadings alone to meet this burden. *Patterson*, 893 F.2d at 604.
>
> In ruling on a motion to dismiss for lack of personal jurisdiction, this Court must determine whether the exercise of personal jurisdiction would violate due process under the Fourteenth Amendment. See *International Shoe, supra*. The United States Supreme Court has determined that "[d]ue process is satisfied if the non-resident defendant has sufficient contacts with the forum state so that the maintenance of a suit against him in that locale does not offend 'traditional notions of fair play and substantial justice.'" *Id*. at 316.
>
> In reaching a decision as to whether this Court has personal jurisdiction over the Individual Defendants, the Court must apply the analysis articulated by the United States Court of Appeals for the Third Circuit in *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982). First, this Court must determine whether Plaintiff's claims in this case arise from the Individual Defendants' forum-related activities or from nonforum-related activities. *Id*. at 588.
>
> If the cause of action arises from forum-related activities, then this Court must determine whether there are sufficient minimum contacts with Pennsylvania (the forum state) arising out of that transaction thereby conferring "specific" jurisdiction. *Id*. The United States Court of Appeals for the Third Circuit established a three-part test for determining if "specific" jurisdiction exists:

4

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"
>
> *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).
>
> On the other hand, if Plaintiff's claims arise out of nonforum-related activities, Plaintiff has the burden of showing that the Individual Defendants, in matters other than the claims being pursued, maintained "continuous and substantial" contacts with Pennsylvania (the forum state) thereby conferring "general" jurisdiction. *Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir. 1981). This latter test for "general" jurisdiction is more difficult to meet in that the Individual Defendants' activities in Pennsylvania (the forum state) must be "extensive and persuasive." See *Reliance Steel*, 675 F. 2d at 588.
>
> When a defendant's contacts with the forum state are not otherwise sufficient to establish personal jurisdiction under the above theories of "specific" or "general" jurisdiction, and when the plaintiff has alleged that the defendant has committed an intentional tort, the Court must also analyze the contacts under the "effects test" as established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, the plaintiff must show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort: and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.
>
> *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1989).

Doc. no. 41, pp. 6-8.

**A. General Jurisdiction**

In his Motion to Dismiss on the basis of a lack of general jurisdiction, Defendant contends that the contacts he had with Pennsylvania were "extremely limited corporate contacts . . . as a Morgan Stanley employee[.]" Doc. No. 48, p. 5. Relying in part on case law from the United States Court of Appeals for the Third Circuit, Defendant argued that many of the

communications which took place between Defendant and Plaintiff Rudolph, were initiated by Plaintiff Rudolph; and, with respect to those initiated by Defendant, Defendant claims these communications are inadequate to give rise to general jurisdiction.  Doc. no. 48, p. 6, citing to *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147 (3d Cir. 1996).

Plaintiffs counter that Defendant is a Pennsylvania-licensed investment advisor, was Plaintiff Ruldolph's "financial advisor," and through Defendant's employment with Morgan Stanley he had continuous and systemic contact via email, regular mail, and telephone calls, with Plaintiff Rudolph in Pennsylvania.  Doc. no. 50, pp. 6-7.  Plaintiffs quote from Defendant's profile on the Morgan Stanley website which sets forth Defendant's belief in "communicating with clients regularly to help them sort the information . . ." and "[k]eeping an open communication" to help Defendant be informed of what matters to his clients.  Id. at p. 7.

In addition to these facts, Plaintiff Rudolph relies, in part, on *Remick v. Manfredy,* 52 F.Supp.2d 452 (E.D. Pa. 1999).[1]  In that case, the defendant law firm admitted to having serviced fifty-four clients in Pennsylvania.  The District Court for the Eastern District of Pennsylvania found, and the Court of Appeals for the Third Circuit agreed, that the law firm had "continuous and substantial" contacts with Pennsylvania (the forum state) in that these contacts were "extensive and persuasive."  However, neither the District Court nor the Court of Appeals in *Remick* found that general jurisdiction could be conferred over the individual attorney defendants.

Here, Morgan Stanley is not a defendant; rather Mr. Babaz, the individual who works for Morgan Stanley, is named.  Thus, general jurisdiction as to Defendant Babaz is difficult to meet.

---

[1] The Court notes that the Court of Appeals for the Third Circuit overturned a portion of the *Remick* District Court decision, in relation to specific jurisdiction as it affected the individual defendants.  See *Remick v. Manfredy*, 238 F.3d 248 (3d Cir. 2001).

Based on the facts the Court has deemed relevant and has set forth in "II. Factual Background" above, the Court does not find that the actions taken by Defendant give rise to general jurisdiction. The Court finds that the emails sent by Defendant were primarily sent in response to questions asked by Plaintiff. This conduct on the part of Defendant does not rise to the necessary level of extensive and pervasive contact required to support a finding of general jurisdiction. See *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) ("[I]nformational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." (citing *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws." )). See also *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000) (Jurisdiction over employees of a corporation does not arise automatically from jurisdiction over the corporation. . . . "Each defendant's contacts with the forum state must be assessed individually.") (citation omitted).

Accordingly, the Court declines to find that general jurisdiction applies given the facts and evidence presented by Plaintiffs.

### B. Specific Jurisdiction

As noted above, in order to prove that this Court can exercise specific jurisdiction over Defendant, Plaintiffs must show the following:

> First, the defendant must have "purposefully directed [its] activities" at the forum. Second, the litigation must "arise out of or relate to" at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'"

*O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted).

The Court notes that each party centered their legal argument on different torts alleged in the Amended Complaint. Defendant focused his argument on the defamation claim brought by Plaintiffs in Count I, while Plaintiffs focused their argument in the context of the breach of fiduciary duty claim set forth in Count III.

Defendant argues that Plaintiffs have failed to meet the minimum contacts requirement, as well as the second prong of the *O'Connor* test, above.[2] Defendant contends that the "only possible Pennsylvania connection to [Defendant's] alleged defamatory remarks is his alleged statement to Mrs. Rudolph in Nevada." Doc. no. 48, p. 7 (footnote omitted). But Defendant notes that no harm befell the marriage as a result of the alleged defamatory remarks made by Defendant. Id., p. 7. Defendant also noted that Plaintiff Rudolph's alleged harm "was not particularized to Pennsylvania" and that Plaintiff Camelback's lost contracts was similarly not particularized to Pennsylvania. Id., p. 8. Simply put, Defendant argues that he did not conduct any activity which he purposefully aimed at Pennsylvania which "arises out of or relates to" the defamation, interference with a contract, or breach of fiduciary claims.

Conversely, Plaintiffs argue that Defendant, as a Pennsylvania-licensed financial advisor, contacted Plaintiff Rudolph in Pennsylvania for the purpose of providing investment advice. Based on the evidence presented (see doc. no. 50-2, generally), it appears that Plaintiff Rudolph

---

[2] Although Defendant suggests a lack of minimum contacts under *International Shoe*, the Court notes, that for specific jurisdiction, a single or accessional act can supply the requisite contacts. See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2854 (2011) ("Since *International Shoe*, this Court's decisions have elaborated primarily on circumstances that warrant the exercise of specific jurisdiction, particularly in cases involving "single or occasional acts" occurring or having their impact within the forum State. As a rule in these cases, this Court has inquired whether there was "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.").

relied on Defendant's financial advice and invested money through Defendant with Morgan Stanley. See doc. no. 50-4. It is clear that Defendant purposefully directed his investment advice activity towards Pennsylvania through his Pennsylvania licensure and by advising Plaintiff Rudolph, a Pennsylvania resident.

The question becomes whether "the litigation" itself "arises out of or relates to" those activities. Here, the defamation claim, which essentially accuses Plaintiff Rudolph of poor or bad morals, is unrelated and did not in any way arise out of the investment advice that Plaintiff Rudolph sought, Defendant gave, and Plaintiffs then utilized to make financial decisions. Similarly, Plaintiff Camelback's claim for intentional interference with a contract is unrelated to and does not arise from the investment advice its principal owner received from Defendant in Pennsylvania. Finally, Plaintiff Rudolph's breach of fiduciary duty claim does not arise out of, nor relate to Defendant's financial advice. Although the evidence presented by Plaintiffs (doc. nos. 50-1 through 50-4) implies that Defendant owed Plaintiff Rudolph a fiduciary duty concerning his Morgan Stanley investments and thus, was required to act in Plaintiff Rudolph's best financial interests with respect to those investments, the alleged defamatory remarks concerning Plaintiff Rudolph's morals are unrelated to the obligation Defendant owed to Plaintiff Rudolph as his fidcuiary.

This Court cannot find a solid nexus between Defendant's forum-related financial advisor activities (*i.e.,* the advice he gave Plaintiff Rudolph with respect to his investment account with Morgan Stanley), and Plaintiff Rudolph's claim for breach of fiduciary duty which is predicated upon defamatory remarks Defendant made elsewhere about a topic that had nothing to do with investments. Simply put, Plaintiff Rudolph does not allege that Defendant failed in his fiduciary duties because he gave Plaintiff Rudolph inaccurate, poor, or incorrect investment advice; rather,

Plaintiff Rudolph wants to claim breach of the fiduciary duty predicated upon other, unrelated statements made by Defendant outside the scope of their fiduciary relationship.

The Court cannot exercise personal jurisdiction where the alleged <u>harm</u> suffered by Plaintiffs – *i.e.,* a loss of income to invest with Defendant – was caused by Defendant's alleged defamatory statements concerning Plaintiff Rudolph's purported marital infidelity.  The Court concludes that personal jurisdiction does not exist under this set of facts.

### C.  Personal Jurisdiction under the "Effects Test"

As noted in this Court's prior Opinion:

> [W]hen a defendant's contacts with the forum state are not otherwise sufficient to establish personal jurisdiction under general or specific theories, and the plaintiff has alleged that the defendant has committed an intentional tort, the court must also analyze the contacts under the "effects test" as established by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Under the effects test, the plaintiff must show that:
> > (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort: and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

Doc. no. 41, p. 11.

Turning to the facts here, the Amended Complaint sets forth three intentional torts allegedly committed by Defendant; and thus, the first prong of the effects test if met.  Second, the alleged harm (*i.e.,* a loss of income) suffered by Plaintiffs was felt by the Plaintiffs in Pennsylvania, thereby meeting the second prong of the effects test.  It is the third prong of this test that Plaintiffs cannot meet.

There are no allegations in the Amended Complaint nor is there any evidence which has been submitted by Plaintiffs which would tend to prove that Defendant "aimed" his allegedly tortious conduct at Pennsylvania "such that" Pennsylvania can be said to be the focal point for

the tortious activity.  See *LaSala v. Marfin Popular Bank Public Co., Ltd.,* 410 Fed.Appx. 474, 477  (3d Cir. 2011) ("In the absence of 'specific facts showing a deliberate targeting of [the forum],' *Marten*, 499 F.3d at 298, the District Court properly refused to premise personal jurisdiction upon the effects test.").

**IV. Conclusion**

Based on the foregoing law and authority, this Court will grant Defendant's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.[3]  An appropriate Order follows.

s/ Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc:     All Registered ECF Counsel

---

[3] Because the Court will grant Defendant's Motion for lack of personal jurisdiction, it will not engage in a discussion on any other grounds.