IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| DR. LAWRENCE P. RUDOLPH, D.D.S.; | ) | |
| Plaintiff, | ) | 2:12-CV-01710-CRE |
| vs. | ) | |
| SAFARI CLUB INTERNATIONAL, | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION[1]

CYNTHIA REED EDDY, United States Magistrate Judge.

### I. INTRODUCTION

Presently before the court is Defendant Safari Club International's ("Defendant" or "SCI") motion for summary judgment. (ECF No. 74). The motion is fully briefed and ripe for disposition. Accordingly, for the reasons that follow, SCI's motion will be granted in part and denied in part.

### II. BACKGROUND

Plaintiff initiated this action in 2012 against SCI for allegedly defaming him.[2]

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

[2] This case was originally assigned to a District Judge in this district. After the District Judge decided the motions to dismiss, on June 21, 2013 he administratively closed the case "until such time as the parties jointly petition[ed] the Court to re-open the case with the representation of all counsel that the case is ready for trial." Order of 6/21/2013 (ECF No. 55). The case remained administratively closed for approximately four and a half years. On January 5, 2018, the parties filed a joint motion to administratively reopen the case, after which the District Judge held a status conference on the matter on January 18, 2018. *See* Motion to Reopen Case (ECF No. 66); Minute Entry of 1/18/2018 (ECF No. 70). The District Judge granted the motion, ordered the parties file "summary judgment documents for final disposition" by January 19, 2018, and indicated in the minute entry that the "[p]arties consent to go before a Magistrate Judge." Minute Entry of 1/18/2018 (ECF No. 70); Order of 1/18/2018 (ECF No. 71) (granting motion to reopen case). Thereafter, the parties submitted a joint consent to proceed before a Magistrate Judge, and the

1

SCI is a nonprofit organization with approximately 55,000 members in 26 countries and its goal is protecting hunter's rights and promoting wildlife conservation. SCI has many chapters in Pennsylvania, and one of those chapters is located in Pittsburgh, Pennsylvania. SCI has approximately 320 members on its Board of Directors ("Board" or "BOD") and a ten-member Executive Committee. The Board is comprised of Officers, Past Presidents' Counsel Members, Regional Representatives, Presidents of SCI or SCI Foundation chapters, Directors-at-Large, International Directors and Honorary International Directors. The Board holds three regular meetings each year. All SCI Officers and Board Members owe SCI a duty of loyalty, duty of care and a duty of good faith and fair dealing. SCI has a Board of Inquiry (BOI) committee of five members that is in charge of investigating and ruling on issues related to member misconduct.

> SCI's bylaws provide the following regarding membership qualifications:
>
> D. Membership Qualifications.
> Any individual, family or business subscribing to the missions, objections, purposes and policies of this Corporation, of good moral character, and demonstrating an active interest in both hunting and in wildlife conservation may be admitted to membership in the Corporation subject to the terms of these Bylaws.
>
> E. Member in Good Standing.
> A member in good standing is one who satisfies the membership qualifications, who exercises wildlife conservation principles, who is current in the payment of dues, fees and assessments to SCI and, if applicable, to one of its authorized Chapters, and who abides by the rules, regulations and qualifications of membership established by SCI or such Chapter.

Joint Statement of Material Fact ("JSMF") (ECF No. 91) at ¶ 6; Article III, § 1 (ECF No. 79-1 at 128).

---

undersigned was assigned to this case on January 18, 2018. *See* Joint Consent (ECF No. 72) and Text Order Granting Consent to Proceed before Magistrate Judge (ECF No. 73). The day after the undersigned was assigned to this case, and in accordance with the briefing order entered by the District Judge, the parties filed their fully briefed motion for summary judgment on January 19, 2018. *See generally* (ECF Nos. 74, 75, 76, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90 and 91).

Plaintiff lives in Paradise Valley, Arizona. Plaintiff is a lifelong hunter and became a member of SCI's Pittsburgh Chapter in 1984.[3] After joining SCI's Pittsburgh Chapter, Plaintiff held the following positions within SCI including:

(1) President of the Pittsburgh Chapter;

(2) Director-at-Large, which is a Board position that enables an SCI member to become familiar with the Board and "groom" that individual for future elected positions and volunteer retention;

(3) Director of the Safari Club International Foundation (SCIF), which is SCI's 501(c)(3) organization;

(4) Chairman of SCI's Political Action Committee ("SCI-PAC"), which promotes SCI's mission and political objectives through Congressional representatives and raises funds for SCI's lobbyists;

(5) Marketing Chairman in which Plaintiff worked in conjunction with other committee members and SCI's professional staff on recruiting members, fundraising and informing the hunting community-at-large about SCI's mission;

(6) National Fundraising Chairman in which Plaintiff led the design and implementation of SCI and SCIF's fundraising efforts;

(7) Two-terms as President of SCI's Board of Directors in which Plaintiff campaigned for and was elected by the Board for two separate terms as SCI's President;

(8) Past President's Council. By virtue of his SCI presidency, Plaintiff was on the Past President's Council and therefore had life tenure as a member of the Board; and

(9) Judge for the SCI International Hunting Award.

In addition to holding those positions within SCI, Plaintiff frequently consulted with other hunters regarding places to hunt and outfitter recommendations, belonged to other non-profit hunting and conservation organizations, was the spokesperson, President, Secretary and Treasurer

---

[3] Plaintiff practiced as a dentist from 1980 to 2006 and in or about 2008-09, he started a dental group with multiple locations in Western Pennsylvania.

of Weatherby Foundation International, a 501(c)(3) nonprofit corporation that educates the non-hunting public on the beneficial role of ethical sport hunting and its contribution to wildlife conservation, was the emcee to the Weatherby Award dinner gala, received awards for hunting and conservation, and gave speeches to and interviews with various media sources.

On July 11, 2011, SCI and Camelback Consulting, LLC, a company owned by Plaintiff, entered into a Spokesperson/Director of Public Outreach Agreement whereby Plaintiff, under the title of "Chief Communications Officer," began working as the worldwide ambassador and spokesperson for SCI and its mission. As spokesperson, Plaintiff agreed to appear on behalf of SCI as ambassador and spokesperson of SCI and its purposes and missions at various events or outings such as sportsmen and hunting shows and conventions, firearms and other hunting equipment shows and expositions. In this role, Plaintiff attended and presented at various events. For example, he spoke at the United Nations on the topic of hunting, appeared on NBC/CNBC to discuss the economics of hunting in Africa, appeared on National Public Radio and was interviewed on the controversy of "preserve" or "high fenced" hunting, appeared on Channel 5 News in Phoenix, Arizona for an interview on the controversy of "captive" hunting, appeared on Fox News to discuss a "controversial" black bear hunt in New Jersey, and produced and appeared in videos SCI's annual hunters' convention and SCI's Political Action committee to advance SCI's agenda and mission.

    A. *Plaintiff's Extramarital Relationships*

Plaintiff was engaged in two extramarital relationships while he held office for SCI or was on official business for SCI.[4] At some time between February and April 2011, Plaintiff attended

---

[4]     Plaintiff was married from 1982 until 2016 when his wife was tragically shot and killed during a hunt with Plaintiff in Zambia, Africa.

a fundraiser in Atlanta for SCI's Atlanta Chapter where he was introduced to Ann McCoy by SCI member Paul Babaz. According to Plaintiff, Babaz wanted Plaintiff to meet McCoy and provide her with some information about traveling and hunting in Africa. After the fundraiser, Plaintiff remained in contact with McCoy and while on another trip to Atlanta, met her for dinner and cocktails and kissed McCoy "maybe twice" in the parking lot. Pl. Dep. 196:18-25, 196:2. Plaintiff and McCoy also exchanged intimate text messages.

In the summer of 2009, Plaintiff traveled to Kenai River Classic in Alaska. He was accompanied by Lori Milliron, whom Plaintiff identified in his registration paperwork as his administrative assistant. Milliron was a dental hygienist by profession and worked for Plaintiff's dental practice at the time she accompanied him to Kenai. According to Plaintiff, Milliron accompanied him as a "medical aide" because he had a heart condition and Milliron "had some training in CPR, advanced CPR, advanced cardio life support" and knew how to use a heart defibrillator. JSMF (ECF No. 91) at ¶ 35; Pl. Dep., 185:2-12 (Tab 7). In conjunction with this trip, SCI member and Regional Representative Eddie Grasser suggested that Plaintiff meet with then-Governor Sarah Palin. Milliron accompanied Plaintiff to meet Governor Palin. Plaintiff and Milliron shared a multi-room cabin together during the Kenai River Classic. No one else stayed in the cabin with them.

### B. Plaintiff's Board of Inquiry

SCI's bylaws establish a five member standing committee called the Board of Inquiry ("BOI"). The BOI is responsible for, *inter alia*, investigating charges that an SCI member engaged in misconduct that has a materially adverse effect upon the purposes or reputation of SCI or SCIF. A BOI matter may be initiated by: (1) petition signed by twenty (20) or more current members of the SCI Board; (2) resolution approved by a two-thirds vote of the SCI Executive Committee; or

5

(3) majority vote of the Board of Directors.[5]

In February 2012, a BOI Petition was initiated against Plaintiff. Before the Petition was initiated, it was circulated to SCI members for review and possible signature. The Petition stated:

> Members of the SCI Board:
>
> Attached hereto and made a part of the petition are statements of Paul Babaz and statements of witnesses which speak for themselves. From these documents, it is clear Paul Babaz was accosted by Larry Rudolph. The statements from Paul Babaz, Client Bishop and Brenda Devito are attached as is [sic] the statutes from Arizona and Nevada.
>
> In addition, there are allegations of illegal hunting and placing trophies in a recordbook – that affidavit is also attached hereto. After you have had an opportunity to review the document, if you believe that the information is true and that it merits a Board of Inquiry, please affix your signature to the attached petition and mail the original signed petition to: SCI Board of Inquiry, SCI Headquarters, 4800 W. Gates Pass Road, Tucson, AZ 85745 and Email a copy to Rparasons@safariclub.org.

JSMF (ECF No. 91) at ¶ 49 (citing SCI000082-000088, SCI000285 (Tab 2)). Included with the Petition were statements from Babaz, Clint Bishop, and Brenda Devito; an affidavit from Kirk Kelso; and copies of laws relating to "Crimes against the Public Peace" and "Assault and Related Offenses."

Babaz alleged, in part, that Plaintiff and his wife asked to speak with him at an event. Plaintiff then allegedly said to Babaz that someone asked Plaintiff about having a girlfriend in Atlanta and asked Babaz how this person would know anything about that. Plaintiff then allegedly began shouting at Babaz, "You f--k with my family, I will f--king kill you," "I will hire somebody to kill you!" "I will f--k you up!" "I will kill your children, I will kill your whole family." JSMF (ECF No. 91) at ¶ 51 (citing (ECF No. 77-1 at 114)). Plaintiff then allegedly tried to engage Babaz

---

[5] At the relevant times, the members of the BOI Petition directed at Plaintiff were Joyce Hanley, David Small, Ralph Cunningham, Scott Chapman and Larry Higgins. Cunningham served as Chairman of the BOI.

in a physical fight, but the row ended after Bishop approached and asked if Babaz was okay.

In addition to this confrontation, the Petition included statements made by Kelso who owned and operated a business known as Pusch Ridge Outfitters which, among other things, engaged in Coues deer hunting in the Republic of Mexico. According to Kelso's statement, in or about 2006, Plaintiff booked a hunt with Kelso. On the first day of the hunt, Plaintiff shot at and wounded a Coues deer but did not recover the deer. The next day, Kelso and Plaintiff went out to see if they could recover the deer. They saw another unwounded deer and Plaintiff wanted to shoot the unwounded deer. However, he indicated to Kelso that he could not shoot as far as the deer was located and insisted that Kelso shoot the deer for him. Kelso shot the deer. Plaintiff then insisted that Plaintiff place his own tag on the deer that Kelso shot and Kelso did so. That same day, Plaintiff exported the deer shot by Kelso as his own from the Republic of Mexico into the United States.

Plaintiff alleges that the circulation of this Petition and the statements contained therein constitutes defamation.

The BOI then conducted an investigation of the statements contained in the Petition, and investigated new matters brought to its attention during the investigation. After its investigation, the BOI by unanimous vote on April 30, 2012 found sufficient evidence that Plaintiff

> [E]ngaged in misconduct and/or breached his fiduciary duties to SCI, including, but not necessarily limited to: public and private threats and abusive behavior toward SCI directors, officers or employees, making false or deceptive record book entries, while pursuing his personal candidacy for a position on the EC [Executive Committee] making false statements and/or publishing non-public SCI information in a publically-available video about SCI, SCIF and its directors, officers, agents or employees, engaging in and/or pursuing inappropriate relationship with women while on SCI business or while disclosing that he was SCI's President, filing questionable reimbursement requests, and engaging in dishonest and [sic] or misleading conduct toward this tribunal, and that this conduct, or any of it, alone or in combination, constitutes misconduct having a materially adverse effect on SCI.

7

JSMF [ECF No. 91] at ¶ 69. ("BOI Findings"). (April 30, 2012 BOI minutes, SCI001432 (Tab 3 at Response No. 8 & 67); Rudolph Dep. Ex. 6 (Tab 11). The BOI further recommended by unanimous vote that the following aspects of Plaintiff's rights of membership be suspended for a period of three years:

> (1) he may not hold any office in SCI, the SCI Foundation or in any chapter of SCI and (2) he may not exercise a vote in any capacity on any matter involving any SCI or SCIF business at any level, including before the SCI Board of Directors.

JSMF [ECF No. 91] at ¶ 70. ("Recommended Sanctions.") (April 30, 2012 BOI minutes, SCI001432 (Tab 67). The BOI also voted to recommend that the Executive Committee and Board consider terminating Plaintiff's spokesperson contract. JSMF [ECF No. 91] at ¶ 71. Plaintiff was then notified of the BOI's recommended sanctions.

On May 12, 2012, SCI held a meeting of the Board. At that time, Plaintiff was a candidate for the position of Secretary of SCI for the 2012-2013 term. The Executive Committee entered into an executive session sometime before the elections took place. During this executive session, Cunningham provided an update to the Board on Plaintiff's pending BOI wherein Cunningham read the BOI's Findings to the Board, the memorandum from the BOI that had been sent to the Executive Committee, and the recommended sanctions.

Plaintiff alleges that Cunningham's reading of the BOI findings about Plaintiff to the Board constitutes defamation.

On August 25, 2012, SCI held a meeting of the Board. In an executive session, Cunningham reported to the Board that the Executive Committee had suspended Plaintiff's membership and summarized their findings and Plaintiff's violations, including the confrontation between Plaintiff and Babaz at the 2012 SCI convention, a pattern of misconduct in relation to SCI officers and personnel, engaging in false or deceptive record book entries with hunt for Coues deer

8

in Mexico, false statements made publicly during Plaintiff's candidacy for SCI secretary in 2012 using SCI intellectual property without obtaining prior approval, misusing his SCI position to pursue inappropriate relationships, filing questionable reimbursement requests, making false, misleading or deceptive statements to the Board, making threats to sue SCI and its members in violation of SCI policy, and violations of the duties of loyalty, care and fair dealing in connection with dealing with a direct competitor.

Plaintiff alleges that Cunningham's report in the executive session constitutes defamation.

The Board ultimately expelled Plaintiff as a member of SCI, terminated his spokesperson agreement, and removed Plaintiff's records from the SCI Record Book and rescinded Plaintiff's hunting awards.

On August 29, 2012, John Whipple, then President of SCI, wrote a letter to Plaintiff and Board Member Atkinson that Whipple allegedly redistributed to others which read in its entirety: "This is to notify you that on August 25, 2012, subsequent to your expulsion from SCI by the Board of Directors, a separate action was taken by the Board to remove all of your record Book entries, to remove your name from all World Hunting Awards you had qualified for, and to remove your name from other SCI awards." JSMF (ECF No. 91) at ¶ 138.

Plaintiff alleges that this letter constitutes defamation by innuendo.

With this backdrop, Plaintiff asserts two common law claims for defamation (Count I) and a claim for defamation by innuendo (Count II).

SCI generally argues that they are entitled to summary judgment on both claims, because (1) Plaintiff cannot prove that the allegedly defamatory statements were "published" which is a necessary element of a defamation claim; (2) the allegedly defamatory statements were privileged communications; (3) Plaintiff is a limited-purpose public figure, by whom a defamation claim

cannot be made based upon the undisputed facts in this action; and (4) Plaintiff cannot show that the statements made about and during SCI's internal investigation of Plaintiff's conduct as a member and as SCI's contracted spokesperson were made with "actual malice." SCI further argues that Plaintiff's defamation by innuendo claim fails because (1) Plaintiff is a limited purpose public figure; and (2) for the separate and independent reason that the August 29, 2012 letter upon which Plaintiff's claim is based is not capable of a defamatory meaning as a matter of law. Each argument will be addressed in turn.

### III. JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1332(a).

### IV. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007); *UPMC Health System v. Metropolitan Live Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving

elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Garcia v. Kimmell*, 381 F. App'x 211, 213 (3d Cir. 2010) (quoting *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Batsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). *See also El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).

## V. DISCUSSION

Pennsylvania has codified the cause of action for defamation. 42 Pa.C.S.A. § 8343. In an action for defamation under Pennsylvania law, the plaintiff has the burden of proving the following elements:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

*Id*. at § 8343(a). The defendant has the burden of proving the following:

> (1) The truth of the defamatory communication.
>
> (2) The privileged character of the occasion on which it was published.
>
> (3) The character of the subject matter of defamatory comment as of public concern.

*Id*. at § 8343(b).

### A. *Publication of the allegedly defamatory statements*

SCI argues that Plaintiff cannot prove that the statements made by SCI were published because it is undisputed that "all of the [s]tatements made by SCI were published solely to its members and its Board, and only within the context of an ongoing internal investigation of [Plaintiff's] conduct as a member, elected officer, and as the official spokesperson/worldwide ambassador of SCI." Def.'s Br. in Supp. of MSJ (ECF No. 75) at 3. In support of this argument, SCI cites two unpublished cases from the Court of Appeals for the Tenth Circuit applying Colorado and Oklahoma state law for the proposition that circulation of a statement within an organization does not constitute publication to state a claim for defamation. *Id.* at 3, n. 3. (citing *Mercer v. Bd. of Trustees for U. of N. Colorado*, 17 Fed. Appx. 913, 915 (10th Cir. 2001) (unpublished) (applying Colorado law); *Angove v. Williams-Sonoma, Inc.*, 70 Fed. Appx. 500, 508 (10th Cir. 2003) (unpublished) (applying Oklahoma law)). It is self-evident that the court cannot use this attenuated persuasive authority without more to grant SCI's motion on the basis that no publication has occurred. SCI does not provide any authority under Pennsylvania law to support its argument that circulation of a statement within an organization does not constitute publication to state a claim for defamation under Pennsylvania law and accordingly, SCI's argument is rejected.

Alternatively, SCI argues that the statements were privileged under Pennsylvania law. SCI argues that "Pennsylvania law recognizes the absolute privilege of employers to publish the factual

basis for an employee's termination." Def.'s Br. in Supp. of MSJ (ECF No. 75) at 4 (relying on *Doe v. Kohn, Nast & Graf, P.C.*, 862 F. Supp. 1310, 1327 (E.D. Pa. 1994)). SCI's argument misses the point, however, because the alleged statements were not made solely in connection with Plaintiff's termination of employment as SCI spokesperson, but were predominantly made in connection with his membership being revoked. It is also unclear what the nature of the employment relationship between Plaintiff and SCI was by virtue of the contract entered into between SCI and Camelback Consulting, LLC. Therefore, the court is not convinced that the limited privilege that statements made by an employer in connection with an employment termination applies in this situation and SCI's argument that the statements made were privileged is rejected.

### B. Is Plaintiff a Limited-Purpose Public Figure?

The question of whether a plaintiff in a defamation case is a public or private figure is a question of law for the court to determine. *Iafrate v. Hadesty*, 423 Pa.Super. 619, 621 A.2d 1005, 1007 (1993). The distinction between a public and private figure is important in a defamation case because a public figure plaintiff in a defamation case is required to show clear and convincing evidence that the defendant's statements were made with "actual malice," in comparison with a private figure plaintiff who need only show simple fault on behalf of the defendant in making the allegedly defamatory statements. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 285-86 (1964); *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761, 764, 774 (1985). Here, SCI argues that Plaintiff was a limited-purpose public figure and therefore Plaintiff needs to prove that the allegedly defamatory statements made by SCI were made with actual malice.

For defamation purposes, the United States Supreme Court has identified two types of public figures: all purpose public figures who are widely recognized, and limited-purpose public

figures who may not be well-known, but are "sufficiently involved in a particular area to be considered as public figures for that purpose." *Medure v. Vindicator Printing Co.*, 273 F. Supp. 2d 588, 609 (W.D. Pa. 2002) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). A limited-purpose public figure is an individual who "voluntarily injects himself or is drawn into a particular controversy and thereby becomes a public figure for a limited range of issues." *Gertz*, 418 U.S. at 351. In determining whether an individual is a limited purpose public figure, the court must determine the "nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id.* at 352. In other words, there must be "a subject-matter overlap" between the "allegedly defamatory speech" and the public controversy that the individual has injected himself into in order for the individual to be considered a limited purpose public figure. *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pennsylvania*, 923 A.2d 389, 403-05 (Pa. 2007).

Here, Plaintiff is not a limited purpose public figure. SCI argues that "[t]he controversy in this case consists of SCI's ability to advocate effectively for hunters' rights and wildlife conservation in the face of public opinion to the contrary." Def.'s Br. in Supp. of MSJ (ECF No. 75) at 6. SCI argues that because Plaintiff voluntarily injected himself SCI's efforts and voluntarily held leadership positions and served as its official spokesperson at the time the allegedly defamatory statements were made, that Plaintiff qualifies as a limited purpose public figure. SCI's argument that its reputation is the "public controversy" giving rise to Plaintiff's defamation claim is misplaced. There is no subject-matter nexus between SCI's public reputation as an organization that promotes hunters' rights and wildlife conservation and the allegedly defamatory statements made about Plaintiff, *i.e.*, *inter alia*, Plaintiff allegedly accosting Babaz at an SCI convention, Plaintiff engaging in hunting misconduct, Plaintiff misusing SCI funds and Plaintiff's marital infidelity. The allegedly defamatory statements all generally raise Plaintiff's speculation into

14

Plaintiff's honesty and not SCI's public reputation in its ability to advocate effectively for hunters' rights and wildlife conservation. Further, there is no evidence that Plaintiff's alleged conduct in his private life and exercising his duties in various roles at SCI ever became a public controversy. Accordingly, Plaintiff is not a limited purpose public figure with regard to the allegedly defamatory statements made and SCI's motion for summary judgment is denied as to this point. Because the court finds that Plaintiff is not a limited purpose public figure, SCI's argument that Plaintiff cannot demonstrate "actual malice" need not be discussed.

### C. Defamation by Innuendo

Lastly, SCI argues that Plaintiff's defamation by innuendo claim is unsupported by the evidence. Specifically, Plaintiff alleges that he suffered defamation by innuendo based upon an August 29, 2012 letter to him from SCI then-President Whipple and Board Member Atkinson that Whipple allegedly redistributed to others which read in its entirety: "This is to notify you that on August 25, 2012, subsequent to your expulsion from SCI by the Board of Directors, a separate action was taken by the Board to remove all of your record Book entries, to remove your name from all World Hunting Awards you had qualified for, and to remove your name from other SCI awards." JMSF (ECF No. 91) at ¶ 138.

According to Plaintiff, this letter constitutes defamation by innuendo because (1) the letter states that Plaintiff was stripped of his hunting awards and record book entries; (2) this implies that Plaintiff is a dishonest hunter and man which lends approval to the allegedly defamatory statements, and (3) due to the current mores of common society, stripping him of all his awards and record book entries is capable of a defamatory meaning to any and all recipients. *See* Am. Compl. (ECF No. 24) at ¶¶ 153, 155-56.

SCI first argues that Plaintiff's defamation by innuendo claim fails because he is a public

15

figure. Because the court has rejected that argument, *supra*, it will not address the issue again here. SCI further argues that the letter is not capable of a defamatory meaning, and therefore it is entitled to judgment as a matter of law for Plaintiff's claim of defamation by innuendo.

Pennsylvania has recognized a cause of action for defamation by innuendo. *Thomas Merton Center v. Rockwell Int'l Corp.*, 442 A.2d 213, 217 (Pa. 1981), *cert. denied* 457 U.S. 1134. "To establish defamation by innuendo, the innuendo must be warranted, justified and supported by the publication." *Livingston v. Murray*, 612 A.2d 443, 449 (Pa. Super. 1992) *appeal denied* 617 A.2d 1275 (Pa. 1992). Whether innuendo is actionable as defamation is a question of law and the legal test to be applied is "whether the challenged language could 'fairly and reasonably be construed' to imply the defamatory meaning alleged by a plaintiff." *ToDay's Hous. v. Times Shamrock Commun., Inc.*, 21 A.3d 1209, 1215 (Pa. Super. 2011) (quoting *Sarkees v. Warner–West Corp.*, 37 A.2d 544, 546 (Pa. 1944)). "In order to assess whether the statement is capable of the defamatory meaning imputed to it by a plaintiff, the 'court must view the statements in context' to ascertain 'the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate." *Krolczyk v. Goddard Sys., Inc.*, 164 A.3d 521, 532 (Pa. Super. 2017) (quoting *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. 2010)). Innuendo cannot be used to put "an unfair and forced construction on the interpretation of the publication." *Bogash v. Elkins*, 176 A.2d 677, 679 (Pa. 1962) (citations omitted). "In other words, innuendo cannot be 'used to introduce new matter, or to enlarge the natural meaning of words, and thereby give to the language a construction which it will not bear.'" *Menkowitz v. Peerless Publications, Inc.*, 176 A.3d 968, 982 (Pa. Super. 2017), *reargument dismissed* (Jan. 11, 2018) (quoting *Sarkees*, 37 A.2d at 546).

In the instant case, the letter simply informs Plaintiff that he was being removed from hunting awards and the record book. The letter does not accuse Plaintiff of any misconduct, accuse

Plaintiff of being a dishonest hunter or man, or allude that he was a dishonest hunter or man. *See Krolczyk,* 164 A.3d at 532 (letter from principal to school-parents that teacher-plaintiffs were discharged for "various reasons" and indicated that school principal's duty was to ensure "the good of the school" and "children's interest" did not constitute defamation by innuendo as a matter of law). Such a finding would enlarge the natural meaning of the notification to Plaintiff that the Board voted to have his hunting awards and records removed from the record book, and does not support a claim for defamation by innuendo.

Accordingly, SCI's motion for summary judgment will be granted as to Plaintiff's claim for defamation by innuendo.

## VI. CONCLUSION

Based on the foregoing, SCI's motion for summary judgment is granted in part and denied in part. An appropriate Order follows.


Dated: June 27, 2018.
By the Court,
s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge


cc: All counsel of record via CM/ECF electronic filing